**John Holland MEREDITH**

v.

**A & P BOAT RENTALS, INC., et al.**

Civ. A. No. 74–3370.

United States District Court,
E. D. Louisiana.

March 29, 1976.

Richmond M. Eustis, William J. Hamlin, Benjamin R. Slater, Jr., New Orleans, La., for plaintiff.

C. Gordon Johnson, Jr., William M. Miles, New Orleans, La., for defendant A & P.

Lawrence E. Abbott, New Orleans, La., for defendant Continental.

Thomas J. Grace, New Orleans, La., for third party defendant Grand Isle Shipyard and intervenor, Travelers Ins. Co.

ALVIN B. RUBIN, District Judge:

The plaintiff was injured while employed by Grand Isle Shipyards (Grand Isle) to perform work as a roustabout on a fixed platform on the Outer Continental Shelf. Continental Oil Company (Conoco) was the owner of the platform and had contracted with Grand Isle to provide certain services on the Conoco platform. The contract contained a provision requiring Grand Isle to "indemnity [sic] and hold harmless [Conoco] . . . against any and all claims . . . which may be brought against [Conoco] . . . by any employee of [Grand Isle]." The injury occurred aboard a crew boat owned and operated by A&P Boat Rentals, Inc. (A&P) under a time charter to Conoco.

The plaintiff sued both A&P and Conoco, claiming that his injuries had been caused by their negligence. Grand Isle was not joined as a defendant; the plaintiff's exclusive remedy against his employer lies, of course, under the Longshoremen's and Harbor Workers' Compensation Act [hereinafter LHWCA], 33 U.S.C. §§ 901–33. 33 U.S.C. § 905(a). Conoco filed a third-party complaint against Grand Isle, seeking indemnity under the provisions of the contract. Grand Isle has moved for summary judgment, claiming that the indemnity provisions are void under the 1972 amendments to the LHWCA.

The LHWCA was enacted in 1927 to provide a compensation remedy to workers excluded from the coverage of state remedies by the decision of the Supreme Court in *Southern Pacific Company v. Jensen* and its

progeny.[1] Coverage of the LHWCA was initially interpreted as limited to those who were injured on navigable waters performing duties relating to navigation or maritime commerce, such as longshoremen and ship repairmen.[2] Offshore oil exploration, assertion of federal control over the Outer Continental Shelf, and extension of the LHWCA to injuries occurring in exploration for minerals on the shelf were almost a quarter of a century away.

The pattern of recovery by the employees covered by the LHWCA underwent significant changes beginning in the mid-1940's. In *Seas Shipping Co. v. Sieracki*, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, the Supreme Court held that longshoremen could recover for the unseaworthiness of the vessel, thus providing these workers a no-fault damage recovery against a third party in addition to their no-fault compensation remedy against their employers. Then, in *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.*, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, the Court held that the shipowner could recover from the employer on the theory of an implied "warranty of workmanlike service" in the stevedoring contract. Breach of the implied warranty could be established without a showing of fault.[3] Thus, the injured employee could recover damages in tort from the shipowner without showing any "fault" in the traditional sense of the word, and the shipowner could recover the amounts paid to the employee from the employer merely by showing that some act of the employer had caused the injury. The employer thus was subject to two no-fault liabilities; the exclusive remedy provision of the LHWCA was a dead letter.

In 1953, Congress passed the Outer Continental Shelf Lands Act [hereinafter OCS-LA], 43 U.S.C. §§ 1331–43. 43 U.S.C. § 1333(c) provides:

> With respect to disability or death of an employee resulting from any injury occurring as the result of operations described in subsection (b) of this section, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. . . . [4]

Thus, the rights of employees such as the plaintiff against their employers and against third-party tortfeasors is governed by the LHWCA; and to some extent the relationship between the employer and the third-party tortfeasor is also governed by this legislation.[5]

In 1972, Congress amended the LHWCA. One of the principal purposes of the amendments was to make the exclusive liability provision of the Act truly exclusive by eliminating the triangle created by the *Sieracki* and *Ryan* decisions, thus sheltering the employer from continued recovery of tort damages. S.Rep. No. 1125, 92d Cong., 2d Sess. 9, 10 (1972). This was accomplished in two ways: First, the "warranty of seaworthiness" was eliminated as to workers covered by the LHWCA.[6] This was sufficient

---

1. See, e. g., *Knickerbocker Ice Co. v. Stewart*, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; *Washington v. W. C. Dawson & Co.*, 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646; *Great Lakes Dredge & Dock Co. v. Kierejewski*, 1923, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756.

2. See Watson, Broadened Coverage under the LHWCA, 33 La.L.Rev. 683 (1973).

3. *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732.

4. Subsection (b) operations include:
   exploring for, developing, removing or transporting by pipeline the natural resources . . . of the subsoil and seabed of the outer Continental Shelf . . . .

5. Section 933 provides for an assignment of the claim against the tortfeasor in the event of an award of compensation. The substantive law governing the third-party action in this case would be the general maritime law. *Kermarec v. Compagnie Generale Transatlantique*, 1959, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550.

6. Section 905(b) provides in pertinent part:
   In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title . . . . The liability of the vessel under this subsection shall not be based upon the warranty of

to eliminate the *Ryan*-indemnity with respect to injuries to employees covered by the Act, as it was well settled that the warranty of workmanlike performance applied only where the vessel warranted seaworthiness. *Davis v. Chas. Kurz & Co.,* 9th Cir. 1973, 483 F.2d 184; *Hobart v. Sohio Petroleum Co.,* 5th Cir. 1971, 445 F.2d 435; *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge,* 5th Cir. 1970, 424 F.2d 684; *Loffland Bros. Co. v. Roberts,* 5th Cir. 1967, 386 F.2d 540; *Ocean Drilling & Exploration Co. v. Berry Bros. Oilfield Service, Inc.,* 5th Cir. 1967, 377 F.2d 511.

Congress did not stop there. Section 905(b) also provides that in third-party actions brought against the vessel by the injured employee, "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." The legislative history indicates two reasons for the inclusion of this provision: a desire to

protect employers from express indemnity provisions exacted by shipowners with superior bargaining power, and an approach to the implied warranty that might be characterized as overly cautious.[7]

Thus, as is so often the case when one statute incorporates another, there is no clear indication of what effect Congress intended the 1972 amendments to the LHWCA to have in cases where coverage of the LHWCA exists because the worker was employed in activities on the Outer Continental Shelf, and would never have been one to whom the warranty of seaworthiness extended.[8]

The literal wording of the LHWCA would clearly bring the indemnity clause here in question within the prohibition of 905(b). Section 902(21) defines "vessel":

The term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising

seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

**7.** The Senate Committee Report provides:

The Committee also believes that the doctrine of the *Ryan* case, which permits the vessel to recover the damages for which it is liable to an injured worker where it can show that the stevedore breaches an express or implied warranty of workmanlike performance is no longer appropriate if the vessel's liability is no longer to be absolute, as it essentially is under the seaworthiness doctrine. Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the seaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the worker.

Furthermore, unless such hold-harmless, indemnity or contribution agreements are prohibited as a matter of public policy, vessels by their superior economic strength could circumvent and nullify the provisions of Section 5 of the Act by requiring indemnification from a covered employer for employee injuries.

Accordingly, the bill expressly prohibits such recovery, whether based on an implied or express warranty. It is the Committee's

intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort.

Under the proposed amendments the vessel may not by contractual agreement or otherwise require the employer to indemnify it, in whole or in part, for such damages.
S.Rep. No. 1125, 92d Cong., 2d Sess. 11 (1972).

**8.** The respective committees of the House of Representatives and the Senate did have before them bills which would have extended the coverage of the LHWCA to all "marine extractive operations." S. 1547, 92d Cong., 1st Sess. (1971); H.R. 11071, 92d Cong., 1st Sess. (1971). These bills were aimed mainly at overruling decisions such as *Offshore Co. v. Robison,* 5th Cir. 1959, 266 F.2d 769, which had extended the coverage of the Jones Act to workers on movable drilling barges. Introductory Remarks of Hon. John Tower on S. 1547, on Marine Petroleum Workers' Compensation Act of 1971, Congressional Record, April 15, 1971. There is no indication in the legislative history of the amendments that consideration was given to the fact that the LHWCA already applied to workers on fixed platforms on the Outer Continental Shelf, that these workers are customarily transported to their places of work by boat, and that any change of the relationship between "vessels" and "employers" would effect a change in the relationship between parties other than shipping companies and the contractors that service their vessels.

out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

By use of the phrase "charter [sic] or bare boat charterer," Congress obviously intended to preclude time charterers from seeking indemnity. Conoco was the time charterer of the vessel on which the plaintiff was injured; this literal approach would preclude the indemnity claim against Grand Isle.

A different result might obtain if Conoco had been sued for negligence occurring on the platform. *Crutchfield v. Atlas Offshore Boat Service, Inc.,* E.D.La.1975, 403 F.Supp. 920. Here, however, the plaintiff has sued Conoco in its capacity as the time charterer of the vessel on which the injury occurred. In literal terms, the statute prohibits the indemnity agreement in the contract between Grand Isle and Conoco. It is true that Congress might have decided not to protect employers from the indemnity claims of crew boat operators and vessel owners operating on the Outer Continental Shelf, and it might have limited the prohibition against indemnity to the relationships between the owners and charterers of cargo ships and those who load and repair them. Apparently this was not considered. It is equally consistent to speculate that, had Congress considered the relationships on the Shelf, it might have decided that the superior bargaining power of interests such as Conoco required an extension of the prohibition of indemnity to relationships such as the one between Conoco and Grand Isle.

The rule that, where the language of a statute is clear, the court is not to seek to derive possible contrary intentions, forecloses such feckless conjecture. None can truly know the intention of the legislature with respect to a subject that never entered its debates. The best, and in such instances, the only intention is that manifested by the words it uses. In view of the literal applicability of the language of the statute, and the absence of any evidence that Congress did *not* intend the prohibition of indemnity

clauses to extend to the relationship here involved, the prohibition is applicable. Accordingly, the motion of Grand Isle for summary judgment is GRANTED.