Argued May 18, affirmed October 29, 1979

WEYERHAEUSER COMPANY,
*Appellant,*
*v.*
PORTLAND STEVEDORING COMPANY,
*Respondent.*
(No. A7805-08109, CA 11907)
601 P2d 911

Paul N. Daigle, Portland, argued the cause for appellant. With him on the briefs were L. Edward Robbins, Ridgway K. Foley, Jr., and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Floyd A. Fredrickson, Portland, argued the cause for respondent. With him on the brief were John Dudrey and Fredrickson, Weisensee & Cox, Portland.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges, and Peterson, Judge Pro Tempore.

PETERSON, J., Pro Tempore.

**PETERSON, J.,** Pro Tempore.

The central issue in this case is whether, under the federal Longshoremen's and Harbor Workers' Compensation Act ("the Act") a voyage charterer who has been held liable in negligence for the injury or death of a longshoreman can recover from the longshoreman's employer on a contract of indemnity. The trial court held that recovery was precluded by the Act, and we agree.

In *Shepler v. Weyerhaeuser Company,* 279 Or 477, 569 P2d 1040 (1977), *cert denied* 434 US 1051, 98 S Ct 903, 54 L Ed 2d 805 (1978), the Supreme Court of Oregon affirmed a judgment for wrongful death against Weyerhaeuser, the plaintiff in the case now before us. That action arose out of a fatal injury to a longshoreman who was employed by Portland Stevedoring, the defendant in the present case. The accident occurred while the longshoreman was working aboard a cargo ship chartered by Weyerhaeuser. In *Shepler* the jury, in response to special interrogatories, found that Weyerhaeuser's negligence was 28% responsible for the death and that Portland Stevedoring's negligence was 72% responsible. Portland Stevedoring was not a party to that case.

Judgment was entered against Weyerhaeuser in the full amount of the damages assessed, and Weyerhaeuser has since satisifed the judgment. It now seeks to recover indemnity or, alternatively, contribution in proportion to fault from Portland Stevedoring. The case is before us on Weyerhaeuser's appeal from summary judgment in favor of Portland Stevedoring.

In support of its claim for indemnity, Weyerhaeuser relies on a provision in the stevedoring contract in which Portland Stevedoring agreed to indemnify Weyerhaeuser, up to specified limits, for

"* * * all claims, demands and causes of action by whomsoever asserted resulting from or arising out of the death or bodily injury of any employee * * * [of

[907]

Portland Stevedoring] even though such injury or death results solely from the negligence or fault of Weyerhaeuser Company * * *."

Portland Stevedoring contends that this provision in the contract is of no effect, relying on 33 USC § 905 which provides that an action for injuries to a longshoreman caused by the negligence of a vessel may be brought against the vessel, and that the longshoreman's employer

> "* * * shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void."[1]

■ The issue is whether Weyerhaeuser, as charterer of the ship, comes within the statutory definition of a "vessel" in 33 USC § 902(21):

> "The term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, *charter [sic] or bare boat charterer,* master, officer, or crew member." (Emphasis added.)

The parties agree that Weyerhaeuser's charter arrangement was not a bare boat charter but was a

---

[1] Section 905(b) provides in full:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

form of voyage charter.[2] Portland Stevedoring contends that the term "charter" in the statutory definition includes voyage charters, while Weyerhaeuser contends that Congress intended that the only charterers to be covered were bare boat charterers. Weyerhaeuser argues that the term "bare boat charterer" in the statutory definition is an alternative for or clarification of the preceding term "charter."

The parties devote considerable argument to principles of statutory construction and to an exploration of the legislative history of the 1972 amendments to the Act, including the provisions with which we are concerned. Although we do not repeat those arguments in detail here, we have considered them carefully and conclude, as did the trial court, that Portland Stevedoring's position is correct and that Congress intended to include voyage charterers in the definition of "vessel."

The purpose of the 1972 amendments was to eliminate a circular pattern of litigation which had become the norm when longshoremen were injured, and to give effect to the statutory limitation of stevedores' liability for on-the-job injuries to their employees. The liability of stevedores for such injuries to their employees was limited by law to the scheduled benefits provided for in the Act. Before the 1972 amendments, however, longshoremen could seek recovery from the vessel upon which they were working on a theory of breach of the vessel's warranty of seaworthiness; the vessel could in turn seek recovery from the

---

[2] The three main types of charter—the voyage charter, the time charter, and the bare boat charter—are described in Gilmore and Black, *"The Law of Admiralty"* 193-94 (2d ed 1975). Briefly, under both a voyage charter and a time charter, the owner retains operative control of the vessel and the charterer specifies the cargo and the destination. The voyage charterer engages the vessel's carrying capacity for a single voyage, while the time charterer does so for a specified period of time. Under a bare boat charter, the charterer mans and operates the ship for the duration of the agreement.

stevedore on a theory of implied or contractual indemnity, thus defeating indirectly the stevedore's statutory limitation of liability for its employees' injuries.[3]

The 1972 amendments eliminated the vessel's warranty of seaworthiness as it applied to longshoremen, leaving negligence as the longshoreman's sole ground of recovery against the vessel, and prohibited the vessel's recovery of indemnity from the stevedore.[4]

Weyerhaeuser argues that prior to the 1972 amendments voyage charterers were not liable to longshoremen under the seaworthiness doctrine, and that the 1972 amendments could not, therefore, have been intended to cover them. Assuming that Weyerhaeuser is correct about the state of the law before 1972, Congress could nevertheless decide to protect the stevedores' statutory limitation of liability by prohibiting the recovery of indemnity from them by all charterers as well as by vessels and vessel owners.

We conclude that Congress did just that. Although the statute may be ambiguous as to just which charterers are included within the definition of "vessel," it is clear that the definition includes agents, operators, masters, officers, and crew members. It appears that Congress, when it amended the Act in 1972, recognized the possibility of negligence actions against the vessel, its owners, and persons closely associated with the vessel, and prohibited those persons from recovering over against the longshoreman's employer. In furthering the purposes of the Act to provide adequately for injured longshoremen and to safeguard their employers' statutory limitation of liability, Congress was not required to limit the coverage of the portions of the 1972 amendments dealing with actions against third parties to those persons or entities which had

---

[3] *Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp.,* 350 US 124, 76 S Ct 232, 100 L Ed 133 (1956).

[4] Further details and citations to the legislative history may be found in the *Shepler* opinion, 279 Or at 488-94.

previously been held to warrant the vessel's seaworthiness. It appears from the new definition of "vessel" that those provisions were intended to cover classes of persons whose negligence might be a cause of longshoremen's on-the-job injuries. A construction of the statute to include voyage charterers in this coverage is consistent with this apparent intent.

This construction is not at odds with the language of the statute. A bare boat charter is a distinctive type of arrangement, quite different from the two other common types—time charters and voyage charters— which closely resemble each other in many particulars. The term "charter" appears to mean "charterer," as used in its customary general sense,[5] while the specific mention of bare boat charterers in the statute reflects, we believe, a Congressional intent to make their coverage clear rather than to make it exclusive.

What little case law exists supports our conclusion. See *Meredith v. A & P Boat Rentals, Inc.,* 414 F Supp 788 (ED La 1976); and *Standard Fruit Co. v. Metropolitan Stevedore Co.,* 52 Cal App 3d 305, 125 Cal Rptr 111 (1975), both holding that time charterers are within the statutory definition of "vessel."[6]

■ Weyerhaeuser's contribution claim is based entirely on the so-called "equitable credit" doctrine, which the Supreme Court of Oregon described but refused to apply in *Shepler.* 279 Or at 509-510. That claim is foreclosed by the recent decision of the Supreme Court of the United States in *Edmonds v. Compagnie Generale Transatl.,* ___ US ___, 99 S Ct 2753, 61 L Ed 2d 521 (1979), where the court held that Congress did not

---

[5] We have made a careful study of the legislative history, and are convinced that the term "charter" was used to mean "charterer."

[6] Weyerhaeuser relies on *Zapico v. Bucyrus-Erie Co.,* 579 F2d 714 (2d Cir 1978); *Gould v. General Mills, Inc.,* 411 F Supp 1181 (WD NY 1976); *Crutchfield v. Atlas Offshore Boat Service, Inc.,* 403 F Supp 920 (ED La 1975); and *Cargill v. United States,* 1977 AMC 50 (ED Va 1976). We do not believe these cases are in point.

intend, by the 1972 amendments to the Longshore-
men's and Harbor Workers' Compensation Act, to
adopt a rule apportioning liability between a negligent
vessel and a negligent stevedore. It also refused to
adopt such a rule as a principle of non-statutory
maritime law. That holding is controlling here.

Affirmed.