**Billy Ray CLOUD**

v.

**UNION OIL COMPANY OF CALIFORNIA et al.**

Civ. A. No. 77–3819.

United States District Court, E. D. Louisiana.

Dec. 12, 1979.

· Harvey J. Lewis, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., for plaintiff.

Lawrence J. Ernst, Christovich & Kearney, New Orleans, La., for defendant, Union Oil Company of California.

### ORDER

DUPLANTIER, District Judge.

For the following reasons, the motion by Union Oil Company of California to dismiss plaintiff's First Supplemental and Amending Complaint is hereby granted.

### REASONS

This case presents an interesting question involving the interrelation between the Longshoremen's and Harbor Workers' Compensation Act[1] (LHWCA) and the Outer Continental Shelf Lands Act[2] (OCSLA).

Plaintiff, Billy Ray Cloud, was employed by Klein Deco Wire Line Service, Inc. (Klein Deco) as a "wireline hand." Cloud alleges that he was injured when a section of steel pipe known as a "lubricator" fell from a tool box which was being transferred from a vessel to the top deck of a fixed oil platform located on the outer Continental Shelf. The vessel, the M/V Jean G, and the platform were owned by defendant Union Oil Company of California (Union). The tool box and the lubricator were owned by defendant Tanneaux, Inc.; the lubricator had been tied to the tool box by Tanneaux employees.

In the original complaint plaintiff alleged negligence on the part of both defendants:

---

1.  33 U.S.C. § 901 et seq.

2.  43 U.S.C. § 1331 et seq.

Tanneaux employees failed to secure the lubricator to the tool box properly; Union employees ordered plaintiff to assist in the offloading, but failed to provide him a safe place and method to work.

By amended complaint, plaintiff added a cause of action against Union based upon general maritime law for the unseaworthiness of the M/V Jean G, the vessel being offloaded.

Union has moved, under Rule 12(b), Fed. R.Civ.P., to dismiss the unseaworthiness claim for failure to state a claim and and in the alternative for summary judgment thereon. Union's position is that OCSLA incorporates LHWCA, including Section 905(b) of the latter statute,[3] part of the 1972 amendments to LHWCA. Thus, Union contends, assuming *arguendo* that plaintiff would otherwise be entitled to the warranty of seaworthiness, Sec. 905(b) deprives plaintiff of a claim based upon unseaworthiness because he is a covered employee under LHWCA.

Plaintiff argues that OCSLA does *not* incorporate the entire LHWCA, and specifically that Section 905(b), enacted after OCSLA, was not intended to apply to the outer Continental Shelf.

OCSLA was enacted in 1953; as originally enacted, the provision incorporating LHWCA, 43 U.S.C. § 1333(c) read as follows:

Applicability of Longshoremen's and Harbor Workers' Compensation Act; definitions

(c) With respect to disability or death of an employee resulting from any injury occurring as the result of operations described in subsection (b) of this section, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. For the purposes of the extension of the provisions of the Longshoremen's and Harbor Workers' Compensation Act under this section—

(1) the term "employee" does not include a master or member of a crew of any vessel, or an officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof;

(2) the term "employer" means an employer any of whose employees are employed in such operations; and

(3) the term "United States" when used in a geographical sense includes the outer Continental Shelf and artificial islands and fixed structures thereon.

The "operations described in subsection (b)" were "any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf." 43 U.S.C. § 1333(b).[4]

In 1972, LHWCA was amended, including the addition of Section 905(b):

(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The

---

3. 33 U.S.C. § 905(b).

4. In 1978, OCSLA was amended and both of the above-quoted provisions are now found in

43 U.S.C. § 1333(b). The amendment is irrelevant to any issues involved herein.

liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

The issue is whether Section 905(b) of LHWCA was intended to be applied to the outer Continental Shelf.

By its terms, Section 905(b) would seem to apply to plaintiff herein. It applies "[i]n the event of injury to a person covered under this chapter", "this chapter" being LHWCA. Workers on the outer Continental Shelf are "covered" through the incorporating provisions in OCSLA quoted above.[5]

Plaintiff argues that the language, "compensation shall be payable under the provisions of the [LHWCA]", means that only the "compensation" provisions of LHWCA are incorporated into OCSLA.

However, the clear language of Section 905(b), enacted after OCSLA, is to the contrary. It applies to any person covered under LHWCA. Section 905(b) does not exclude those who became covered under LHWCA by virtue of OCSLA.

To read these statutes as plaintiff urges would cause, on the outer Continental Shelf, a host of problems that Congress sought to remedy by the enactment of Section 905(b). Vessel owners doing business on the outer Continental Shelf, faced with a suit by employees of contractors, would seek to enforce indemnity agreements with the employer of such a claimant. Thus, the principle that compensation is the exclusive

liability of the employer to an employee would be circumvented by an outer Continental Shelf version of the *Sieracki-Ryan* triangle.[6]

There are apparently no reported cases dealing with the precise issue raised herein.[7] However, there is a decision by a court in this district which dealt with similar issues.

In *Meredith v. A & P Boat Rentals, Inc.,* 414 F.Supp. 788 (E.D.La.1976), the issue was whether that provision in Sec. 905(b) of LHWCA which invalidates an agreement by an employer to indemnify a vessel owner against a personal injury claim by the employer's LHWCA employee, based upon negligence of the vessel, is applicable to a claim by an OCSLA covered employee. In that case, Judge Rubin held that the statutory language spoke clearly in favor of applicability. The court recognized that Congress, in passing the 1972 amendments to LHWCA, may never have considered their effect on OCSLA. However, in the absence of any evidence of legislative intent to the contrary, the literal words of the statute were given effect.

In the instant case, plaintiff also argues that the statute is ambiguous and that an ambiguous statute should not be read to destroy a long and clearly established cause of action, citing *Edmonds v. Compagnie Generale Transatlantique,* —— U.S. ——, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). This argument fails upon both of its bases. First, the language of the statute is clear, not ambiguous. Second, a right of action for unseaworthiness by an outer Continental Shelf worker is not one which is long or clearly established. As late as 1975, the Fifth Circuit expressed uncertainty as to

**5.** 43 U.S.C. § 1333(b) formerly § 1333(c).

**6.** *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Union has in this case filed a third-party action against Klein Deco, plaintiff's employer, based on an indemnity agreement. The validity of such an agreement is not before the court at this time.

**7.** After the date of the instant decision, but before publication of this opinion, the Fifth Circuit decided *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (1980). That case did not involve a claim based upon unseaworthiness, did hold that § 905(b) applies to an OCSLA employee, and that such an employee may bring an action for negligence under § 905(b) against his employer *qua* vessel owner. The decision and reasoning in *Longmire* are consistent with and support our holding herein.

the existence of such a right. *Law v. Sea Drilling Corporation,* 510 F.2d 242 at 248, fn.16 (5th Cir. 1975).