EDWARDS, Judge.
Plaintiff, L & L Sandblasting, Inc., instituted this action against its insurer, American Southern Insurance Company, alleging that defendant has defaulted on its obligations under an insurance policy and seeking return of the premium paid. After trial on the merits, the district court rendered judgment for defendant dismissing plaintiff’s demand. Plaintiff has taken a devolutive appeal from that judgment. We affirm.
*483 In March of 1977, plaintiff-appellant, L & L Sandblasting, Inc. (“L & L”) entered into a contract to do certain sandblasting and painting work for Shell Oil Company (“Shell”). The Shell “Work Order Conditions” required that plaintiff secure a liability insurance policy. The work order agreement also contained the following provision:
“Contractor shall indemnify Shell against all loss or damage arising out of the negligence of Contractor or any subcontractor and not within Contractor’s indemnity in the next following sentence. Contractor shall indemnify and defend Shell and its employees and agents against all claims, suits, liability and expense on account of injury or death of persons including employees of Shell or Contractor, and subcontractors and their employees or damage of property arising out of or in connection with performance of this Order, and not caused solely by Shell’s negligence without any contributory negligence or fault of Contractor or any subcontractor. Shell may participate in the defense of any such claim or suit without relieving Contractor of any obligation hereunder.”
L & L secured a contractual liability insurance policy from defendant-appellee, American Southern Insurance Company (“American Southern”). The “Designation of Contracts” section of the policy provided as follows:
“The policy covers only the work order agreement between Shell Oil Co. and the named insured (attached hereto). All other contracts must be approved by the company prior to coverage being afforded.”
The insurance policy provided coverage as follows:
“The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages because of
Y. bodily injury or
Z. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient ...” (Emphasis added.)
Herman Jason, an L & L employee, was injured while working on the Shell Oil Company job. Jason filed suit against Shell in Federal District Court, alleging that he was injured aboard a Shell Motor Vessel located off the Louisiana coast in the Gulf of Mexico. Shell called upon L & L to honor the indemnity provision of the work order cited above. Shell filed a cross-claim and third party complaint against American Southern seeking indemnity for any sum which it might have to pay Jason as well as expenses for the costs of defending Jason’s claim.
American Southern offered to defend L & L in the Jason matter, but refused to defend and indemnify Shell. American Southern’s attorney notified L & L that it was not legally obligated to pay the Jason claim because the indemnity provision of the work order agreement was void under Section 5(b) of the Longshoremen and Harbor Workers Compensation Act. L & L subsequently paid Jason $9,000.00 in settlement of his claim, in order to maintain good business relations with Shell.
L & L filed suit against American Southern seeking return of the insurance premium ($28,000.00) and attorney fees. Alternatively, L & L sought reimbursement for the $9,000.00 paid to Herman Jason in settlement of his claim.
The district court rendered judgment for the defendant dismissing plaintiff’s suit. The trial court stated that plaintiff had failed to prove that defendant had defaulted or that there was no contract of insurance. The court found that the defendant stood ready to fulfill its obligations under the policy, i.e., to defend L & L, but that plaintiff waived its defenses and settled the *484 suit as part of its customer relations with Shell. L & L has devolutively appealed the judgment of the district court. Appellant contends that it presented ample evidence to show that there was no valid contract of insurance because there was no meeting of the minds of the parties. Alternatively, appellant contends that if there was a contract of insurance, American Southern defaulted on its obligations under that contract.
L & L relies upon the testimony of its President, Richard D. LeDoux, to establish that there was not a valid contract of insurance. LeDoux testified that L & L would not have purchased the insurance policy unless the indemnity and hold harmless agreement were covered. L & L asserts that the coverage of the indemnity provision was the “cause” of the contract as that term is used in LSA-C.C. art. 1896,[1] and that its consent was vitiated due to the vice of error as to the nature and object of the contract.[2]
In order to invalidate a contract for error, it is necessary that the error bear on the principal cause of the contract. This requirement is contained in LSA-C.C. art. 1823, which provides as follows:
“Errors may exist as to all the circumstances and fact which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.”
The insurance policy issued by American Southern covered a multitude of risks. The record clearly indicates that L & L sought coverage of all operations which were undertaken pursuant to the work order agreement. Under the section of the insurance policy entitled “Description of Hazards” the policy provided coverage for the following operations and premises:
“17235—Painting, decorating or paper hanging including shop operation. N.O.C. 42264—Contractors permanent yards—maintainance (sic) or storage of equipment or materials.”
Thus, the policy provided insurance coverage for a number of areas in which L & L was exposed to liability aside from the work order indemnity provision.
The trial court concluded that plaintiff did not bear its burden of proving that there was not a binding contract of insurance. This conclusion is obviously based on a finding that coverage of the indemnity provision was not the primary cause for L & L to obtain the insurance policy. In light of the fact that the contract of insurance covered such a wide range of other risks, this finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Having concluded that the trial court was correct in holding that plaintiff did not bear its burden of proving that the insurance contract was invalid, we turn our attention to the questions of whether American Southern defaulted on its obligations under the policy.
The district court held that plaintiff failed to prove that American Southern defaulted on its contract of insurance. The court found that defendant stood ready to fulfill its obligations, i.e., to defend L & L but that L & L elected to waive its defenses and settle the Jason claim. The record *485 fully supports these findings of the trial court.
Portions of the record of the Federal Court action filed by Herman Jason were introduced into evidence. This record contains admissions of fact that establish that Jason was working on a fixed platform located on the outer continental shelf. By virtue of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b),[3] Jason’s claim was within the purview of the Longshoremen and Harbor Workers Compensation Act.
Section 5(b) of the Longshoremen and Harbor Workers Compensation Act provides:
“(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedor-ing services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.” (Emphasis added.)
American Southern relied upon this statute in denying liability based upon the indemnity provision of the Shell work order agreement.[4]
In a letter introduced into evidence, American Southern, through its attorney, advised L & L that it had a defense against the Shell claim based upon 33 U.S.C.A. § 905(b).[5] In the same letter, American Southern offered to defend L & L in the Jason litigation and agreed to pay the Shell claim if Shell was successful after trial on the merits. Richard LeDoux, L & L’s President, testified at trial that his company decided to settle the Jason claim, rather than assert its defenses against Shell, because Shell was an important customer.
Our review of the record reflects that the trial court was correct in finding that American Southern did not breach its contract of insurance. American Southern’s obligation was to pay on behalf of its insured all sums which the insured was “legally obligated” to pay and to defend the insured against any suit seeking such damages. American Southern stood ready to honor these obligations at all times and should not be held liable for a business decision made by L & L.
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against plaintiff-appellant, L & L Sandblasting, Inc.
AFFIRMED.

. LSA-C.C. art. 1896 provides:
“By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made.”

. LSA-C.C. art. 1841 provides:
“Error as to the nature of the contract will render it void.
“The nature of the contract is that which characterizes the obligation which it creates. Thus, if the party receives property, and from error or ambiguity in the words accompanying the delivery, believes that he has purchased, while he who delivers intends only to pledge, there is not (no) contract.”

.43 U.S.C. § 1333(b) provides, in pertinent part, as follows:
“(b) With respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable under the provisions of the Longshoremen’s and Harbor Workers’ Compensation Act.”

. For a discussion of the policy considerations and legislative history behind this indemnity agreement prohibition, see Judge Rubin’s opinion in Meredith v. A & P Boat Rentals, Inc., 414 F.Supp. 788 (E.D.La., 1976).

. American Southern’s attorney also advised L & L that it had an additional defense because Shell’s negligence in causing the accident was the sole negligence, a condition specifically excluded by the indemnity provision of the work order agreement.