**Jesse AUCOIN**

v.

**PELHAM MARINE, INC.; Chevron U.S.A., Inc.; U.S. Fire Insurance Company; Champion Oil and Gas Service, Inc.; South State Insurance Company; Lexington Insurance Company: New York Marine Managers, Inc.; South State Insurance Company; Lewis Crane Service, Inc.; First State Insurance Co.; Highlands Insurance Co.; Nicklos Drilling Company; Dual Marine Co.**

**Civ. A. No. 83–1114.**

United States District Court, W.D. Louisiana, Lake Charles Division.

Aug. 20, 1984.

---

Jones, Jones & Alexander, Cameron, La., for plaintiff.

Michael J. McNulty, III, Lake Charles, La., Hanemann & Little, Stockwell, Sievert, Viccellio, New Orleans, La., Clements & Shaddock, Lake Charles, La., McLoughlin, Barranger, Provosty & Melancon, New Orleans, La., Woodley, Barnett, Cox, Williams, Fenet & Palmer, Lake Charles, La., Ross, Griggs & Harrison, Houston, Tex., Scofield, Bergstedt, Gerard, Mount & Veron, Lake Charles, La., Voorhies & Labbe, Lafayette, La., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., Adams & Reese, New Orleans, La., for defendants.

## MEMORANDUM RULING ON MOTION FOR SUMMARY JUDGMENT FILED BY CHAMPION AND ITS INSURER, SOUTH STATE

EDWIN F. HUNTER, Jr., Senior District Judge.

Plaintiff filed suit against Chevron and other defendants, alleging that on February 20, 1983 he was injured while performing work as a longshoreman engaged in the unloading of pipe from the M/V JEANNE PELHAM. Chevron thereafter filed a third party complaint against multiple third party defendants including Champion (the employer of plaintiff) and Champion's in-

surer, South State, alleging that legally and contractually Champion was liable to Chevron for the claims asserted by plaintiff against it, and that South State, as insurer of Champion, was also responsible in its position as insurer. Chevron's third party complaint is predicated on a contract between Chevron and Champion, wherein Champion had agreed to indemnify Chevron for claims asserted by plaintiff.

The moving parties have requested summary judgment on two separate and distinct grounds:

(1) The Longshoremen's and Harbor Workers' Compensation Act (33 U.S. C.A. 905(b)) bars the third party complaint, and

(2) The Louisiana Oilfield Indemnity Act of 1981 (LSA R.S. 9:2780) bars Chevron's third party complaint against Champion, plaintiff's employer, and its insurer South State.

Chevron, on March 26, 1981, entered into a "Time Charter" with Pelham Marine, Inc. for the use of the M/V JEANNE PELHAM on the inland and coastal waters of South Louisiana and the Gulf of Mexico. Under this charter Pelham maintained the responsibility for the management and operation of the vessel.

### § 905(b) Longshoremen's and Harbor Workers' Compensation Act

33 U.S.C.A. § 905(b) provides in part as follows:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party ... and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void ..."

This section of the Act provides compensation under the Act as the exclusive remedy of an employee against his employer for injury caused by the negligence of a vessel and explicitly prohibits and declares void any agreement of indemnification between the employer and the vessel.

■ Two conditions are necessary in order for an injury to be compensable under the Longshoremen's and Harbor Workers' Act: the injured worker must be "an employee" as defined in the Act, and the location of the injury must be upon navigable waters. The existence of these factors is clearly supported by the facts and is uncontested. In order for the exclusiveness of liability against the employer to apply, two additional factors must be present: First, there must be a vessel; and second, the injury must be caused by the negligence of the vessel. In the case at bar, Chevron, as a time charterer of the M/V JEANNE PELHAM, is considered a vessel for the purposes of the Act. The courts have consistently held that a Time Charterer is a vessel as defined in Section 902(21) of the Act. *Weiland v. Pyramid Ventures Group*, 511 F.Supp. 1034 (M.D.La.1981); *Meredith v. A and P Boat Rentals, Inc.*, 414 F.Supp. 788 (E.D.La.1976). The question of the negligence of the vessel is an issue of fact that must be decided after a trial on the merits between plaintiff and Chevron.

■ The scenario of this case is all too familiar and the facts and issues have been litigated in this circuit before. The injured employee sues the vessel for injuries caused by the negligence of the vessel, and the vessel, thereafter, asserts a third party claim against the employer.

In *Meredith* the plaintiff was employed by Grand Isle Shipyards to perform work on the Outer Continental Shelf. Conoco was the owner of the platform and had contracted with Grand Isle to provide certain services on the Conoco platform. The contract contained a provision requiring Grand Isle to indemnify and hold harmless [Conoco] against any and all claims, etc. The injury occurred aboard a crew boat owned and operated by A and P Boat Rentals under a time charter to Conoco. The plaintiff sued both A and P and Conoco, claiming that injuries had been caused by

their negligence. Grand Isle was not joined as a defendant; the plaintiff's exclusive remedy against his employer lies, of course, under the Longshoremen's and Harbor Workers' Compensation Act. Conoco filed a third party complaint against Grand Isle, seeking indemnity under the provisions of the contract. Grand Isle moved for summary judgment, claiming that the indemnity provisions were void under the 1972 amendment. The motion for summary judgment was sustained. Judge Rubin, in sustaining the motion for summary judgment, noted:

> The literal wording of the LHWCA would clearly bring the indemnity clause here in question within the prohibition of 905(b). Section 902(21) defines "vessel":
>
>> The term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.
>
> By use of the phrase "charter [sic] or bare boat charterer," Congress obviously intended to preclude time charterers from seeking indemnity. Conoco was the time charterer of the vessel on which the plaintiff was injured; this literal approach would preclude the indemnity claim against Grand Isle.

Chevron's third party claim for indemnity against South State Insurance Company, Champion's insurer, is also barred for the same reasons. See, *Voison v. ODECO*, 557 F.Supp. 715 (E.D.Tex., 1982). There, the court unequivocably held the contractual provision—which required that all insurance policies of casing crew employer name drilling rig company as additional insured—to be void and unenforceable. In so doing, Judge Fisher stated:

> ... It is but another way of requiring that the employer of maritime workers indemnify the vessel for her negligent acts. As such, that clause of the Contract is void as a matter of law and its

"breach" by Rig Hammers, if such there be, does not support a claim for damages. 557 F.Supp. at 720.

> ... This shifting of liability from the negligent vessel to the employer of the maritime workers, however cleverly done and under whatever rubric, is contrary to both the letter and the history of section 5(b) of the Act. The court therefore holds that contractual provision to be void and unenforceable against Rig Hammers. 557 F.Supp. at 722.

This holding is in complete conformity with the reasoning of the Fifth Circuit. *Johnson v. American Mutual Liability Insurance Co.*, 559 F.2d 382 (1977). The case involved a direct action by an employee receiving compensation under the Longshoremen's and Harbor Workers' Compensation Act against his employer's insurance carrier to recover damages for alleged negligence and wantonness in conducting certain safety inspections and in providing safety engineering to the employer. The court readily admitted that § 905(b) does not expressly grant immunity to a compensation insurer from liability as a third person tort feasor. But in examining the policy and spirit of the Act, the court concluded that the insurance carrier was entitled to the immunities of the employer and that, indeed, Congress never contemplated the carrier's being held liable for damages as distinguished from compensation:

> The Act explicitly immunized one, the employer, from liability for damages and, we think, impliedly so immunizes the other, the carrier.

> .    .    .    .    .

> ... [S] the Act charges the carrier with the liability of the employer (creating a lien against the assets of the carrier, 33 U.S.C.A. § 917), the carrier is likewise entitled to the immunities of the employer, and that indeed the Congress never contemplated the carrier's being held liable for damages as distinguished from compensation ...

> .    .    .    .    .

> The *quid pro quo* expected from the employer in return for the grant of im-

munity from tort liability is, in the case of the self-insurer, the payment of compensation, and in the case of the insured employer the payment of insurance premiums adequate to cover compensation liability—not the payment of insurance premiums adequate to cover unlimited tort liability, either of the employer or of the compensation insurer. 559 F.2d 382 (5th Cir.1977).

Chevron cites a line of cases in support of its argument that § 905(b) does not bar his third party claims. These cases are easily distinguished. In *Crutchfield v. Atlast Offshore Boat Services, Inc.*, 403 F.Supp. 920 (E.D.La.1975), the court upheld the validity of Gulf's indemnity agreement with the injured's employer, Packard, and denied Packard's motion for summary judgment. The facts as reported did not show that the vessel was time chartered to Gulf. Judge Rubin treated Gulf as an entity separate and apart from the vessel. In the case at bar, Chevron is not an "other" party; it must be treated as a vessel since it time chartered the M/V JEANNE PELHAM. As *Crutchfield* recognizes, section 905(b) prohibits and renders null and void indemnity agreements between the employer of the injured worker and the vessel.

*Olsen v. Shell Oil Co.*, 595 F.2d 1099 (5th Cir.1979) is not pertinent. There, Shell was not barred from recovering under an indemnity contract executed between itself and Movible, the injured's employer. Chevron's reliance on *Olsen* to support this theory has no merit. *Olsen* made a distinction between the character of the instrumentality upon which the injury occurred and not the status of the party as vessel owner or non-vessel owner. The injury in that case occurred on a drilling platform. The court created an exception to the prohibition against indemnification clauses "where the injuries were sustained on a stationary offshore platform rather than a vessel." The *Olsen* court adopted this distinction from the case of *Ocean Drilling & Exp. Co. v. Berry Bros. Oilfield Service*, 377 F.2d 511 (5th Cir.1967) which suggested the possibility of a party contracting to indemnify another party when the accident took place on a fixed unmanned platform. In the case at bar, the accident did not occur on a fixed platform, but on a maritime vessel, the M/V JEANNE PELHAM.

Our conclusion: Section 905(b) is a bar to the third party claim of Chevron against Champion and its insurer, South State.

### LSA R.S. 9:2780—LOUISIANA OILFIELD INDEMNITY ACT OF 1981

Application of the Indemnity Act of 1981 (actually an anti-indemnity act) also bars recovery by Chevron against Champion and South State. The Act expressly provides that it is the intention of the legislature to declare null and void and against public policy any provision in any agreement which requires defense and/or indemnification for death or bodily injury. The Act also prohibits any provision or agreement between the contracting parties which requires "waiver of subrogation, additional named insured endorsement, or any other form of insurance protection which would frustrate or circumvent the prohibition of this section ..." The policy of the Act's prohibition against indemnification is to remedy the "perceived" inequities that might result because of the superior bargaining position held by oil companies over small oilfield contracting companies.

Chevron, in its exceptionally well prepared brief, argues that the Louisiana statute: (1) is inconsistent with federal law and cannot be applied; (2) that the scope of the prospective language does not cover the type of services Champion provided to Chevron; (3) that it violates the obligation of contract in violation of the United States Constitution and the Louisiana Constitution; (4) that it violates the due process and equal protection clauses of the United States Constitution.

We have heretofore noted that the motion for summary judgment should be granted because Section 905(b) is a bar to the third party complaint of Chevron. For this reason we will not discuss at length Chevron's constitutional contentions.

The Act governs the contractual relationship between Chevron and Champion and its insurer, South State. At the time of the accident, Jesse Aucoin was unloading casing and pipe used for offshore drilling. As evidenced by the Service Order and Agreement between Chevron and Champion, Champion was providing "necessary" roustabouts in connection with Chevron's offshore oil production and their work included the loading and unloading of vessels carrying pipe and casing used in oilfield production. The effective date of the Act was September 11, 1981 and the date of the Service Order and Agreement between Chevron and Champion was January 1, 1983, with the accident occurring on February 20, 1983.

As evidenced by the Service Order and Agreement between Chevron and Champion and the deposition of Jesse Aucoin, Champion contracted to perform work at the Chevron yard located in Cameron, Louisiana, which was located adjacent to a body of water. All work was performed at that yard located in Cameron, Louisiana. Champion is a Louisiana corporation with its principal place of business in Patterson, Louisiana. Chevron is a foreign corporation doing business in Louisiana with a yard located in Cameron, Louisiana.

■ The Act governs the relationship between Chevron and Champion; the third party claim against Champion seeking indemnity is barred. In addition, the third party claim against South State should also be dismissed. This follows from an application of Subsections G and I. Subsection G renders null and void any agreement between the parties (Chevron and Champion) which requires additional named insurance endorsements or any form of insurance protection which would circumvent the prohibitions of the Act. Subsection I renders null and void agreements that are not made between the parties, such as insurance coverage. It provides that the Act applies to "provisions contained in, collateral to, or affecting agreements ... which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future." Certainly the insurance agreement between South State and Champion is "collateral to" Champion's contract with Chevron to provide indemnity.[1] Therefore, summary judgment should also be granted in favor of South State on the basis of the Louisiana Act.

■ Chevron contends that application of the Louisiana Oilfield Indemnity Act to this accident would constitute retroactive application which is prohibited. We do not agree. The Act closes with the following paragraph:

This Act *shall apply* to certain contracts in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee *in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreement* or blanket contracts in whatever form and by whatever name. *The provisions of*

---

1. Subsections G and I provide in full as follows:

G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect.

I. This Act shall apply to certain provisions contained in, collateral to or affecting agreements in connection with the activities listed in Subsection C which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future. This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name. The provisions of this Act shall not apply to a contract providing indemnity to the indemnitee when such contract was executed before the effective date of this Act and which contract governs a specific terminable performance of a specific job or activity listed in Subsection C. Added by Acts 1981, No. 427, § 1. Amended by Acts 1981, Ex.Sess., No. 33, § 1; Acts 1982, No. 237, § 1.

*this Act shall not apply to a contract providing indemnity to the indemnitee* when such contract was executed before the effective date of the act *and which contract governs a specific terminable performance of a specific job* or activity listed in Subsection C.

The requirements of the Act are satisfied. The Service Order Agreement dated *January 1, 1983* between Chevron and Champion, pursuant to which Jesse Aucoin was working, was entered into long after the effective date of the Act. Chevron's request that Jesse Aucoin and his crew unload the vessel occurred long after the effective date of the Act and the accident occurred long after the effective date of the Act. Accordingly, and as explained by the above article, the Act is not being applied retroactively, but rather is being applied to a job contracted in 1983 and giving rise to an accident during the same year. When Chevron entered into the January 1, 1983 Service Order Agreement with Champion to perform roustabout work at its Cameron yard, it was well aware of the Louisiana Oilfield Indemnity Act of 1981 and was not prejudiced by it. Likewise, when it requested that Champion, through its employees, including Jesse Aucoin, unload the vessel, Chevron was well aware of the Louisiana Oilfield Indemnity Act of 1981 and was not prejudiced by it.

■ Chevron attacks the constitutionality of the Louisiana Indemnity Act. In *Ballestaedt v. Amoco Oil Company*, 509 F.Supp. 1095,[2] Judge Collins of the Eastern District of Louisiana considered the many constitutional attacks asserted against the Act and concluded that the Act was constitutional and was a "rational way to protect Louisiana workers and the oil industry in general from less than optimum safety measures."

In the reported case of *Bryant v. Platform Well Service, Inc.*, 563 F.Supp. 760 (E.D.La.1983), Judge Collins again maintained the constitutionality of the Act and granted summary judgment dismissing the third party demands against the contractor.

## ATTORNEY'S FEES

Chevron contends that even though Champion and its insurer may not be obligated to indemnify it pursuant to the indemnity language of the contract because of the prohibitions of the Louisiana Oilfield Indemnity Act (L.S.A.–R.S. 9:2780) and/or the Longshoremen's and Harbor Workers' Compensation Act (Section 905(b)) that Champion and its insurer must still defend Chevron in this lawsuit. We do not agree.

Section A of the Louisiana Oilfield Indemnity Act provides in pertinent part:

"The legislature finds that an inequity is foisted on certain contractors and their employees by the *defense* or indemnity provisions ... it is the intent of the legislature by this section to declare null and void and against public policy of the State of Louisiana any provision and any agreement which requires *defense* and/or indemnification ..."

The Louisiana Act not only declares null and void indemnity provisions, but also any obligation of Champion and its insurer to defend Chevron. This unmistakable intention was recognized by the court in *Great Atlantic Insurance Company v. Martin Services International*, 445 So.2d 146 (La. App.1984). The court stated that if the Act is applicable not only are the indemnity provisions of the contract destroyed, but any duty to defend is also null and void and the indemnitor owes no duty to defend the indemnitee.

Atlantic further refused to *defend* Edmond's lawsuit relying on L.S.A.–R.S. 9:2780. This law provides that the type of indemnity sought by Tenneco pursuant to its work contract with Martin is against public policy (contra bonos mores) and therefore that portion of the work contract is void. We agree with this interpretation effect of the new law as it relates to indemnity contracts of this nature.

2. N.D.Iowa 1981 (Judge McManus).

The Longshoremen's and Harbor Workers' Compensation Act also holds null and void any provision obligating the indemnitor to *defend* the indemnitee. In *Lucas v. Brinknes Schiffahrts Ges Franz Lange G.M.B.H. and Company K.G.*, 379 F.Supp. 759 (D.C.Pa.1974), the court recognized that the prohibition of the L.S.H.W.A. not only prohibits indemnity but also the obligation of the indemnitor for costs and attorney's fees. Also see *Voison v. ODECO Drilling, Inc.*, 557 F.Supp. 715 (E.D.Tex. 1982). Chevron cites two cases, *Stephens v. Chevron Oil Company*, 517 F.2d 1123 (5th Cir.1975) and *Hobbs v. Teledyne, Movible Offshore, Inc.*, 632 F.2d 1238 (5th Cir. 1980) in support of its argument. However, these cases do not address nor mention the Louisiana Oilfield Indemnity Act or the Longshoremen's and Harbor Workers' Compensation Act. In both of these cases, Chevron had viable indemnity contracts. Chevron was simply found not liable and sought recovery of attorney's fees and costs incurred by it in defense of the lawsuit. In our situation, Chevron's claim for indemnity, together with attorney's fees and costs, are barred by both Louisiana Oilfield Indemnity Act and the Longshoremen's and Harbor Workers' Compensation Act.

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

### VS.

### JOHNSON, ET AL

*No. 83–747, 52 L.W. 4869 (June 26, 1984)*

Champion and South State have cited this United States Supreme Court decision as authority for the proposition that Chevron is immune from tort liability, and accordingly is entitled to no indemnity from Champion and/or South State. Chevron's counsel, by letter dated August 16, 1984, states:

> "Of course, Chevron fully agrees that the recent decision (June 26, 1984) ..., clearly holds Chevron immune from tort liability to plaintiff.

> "However, as a matter of law Chevron is entitled to the recovery of its costs of defense and legal fees for which Champion, et al, and the other third party defendants are liable".

We will not at this time comment on the effect of the *Washington* decision as to Chevron's possible liability to plaintiff. We do attach a copy of Judge Shaw's ruling in *Doucet v. Atlantic Richfield*, (No. 83–0351, W.D.La., July 27, 1984).

For reasons heretofore stated, the motion for summary judgment filed by Champion and its insurer is granted in its entirety.[3] Appropriate judgment should be submitted after conference between court and counsel for Champion and Chevron.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

CHESTER LOUIS DOUCET

VS.

ATLANTIC RICHFIELD
COMPANY

CIVIL ACTION NUMBER
83–0351

SECTION O

### RULING

SHAW, District Judge.

This matter comes before the Court on the motion of Atlantic Richfield Company (ARCO) for summary judgment in its fa-

---

**3.** *United States Contract Clause (Art. 1 § 10, cl. 1).* The recent case of *Exxon v. Eagerton*, 462 U.S. 176, 103 S.Ct. 2296, 51 L.W. 4706, exemplifies the strength of the Contracts Clause of the United States Constitution. That case upheld the Contract Clause attack on an Alabama statute that prohibited oil producers from passing on a severance tax to consumer. Appellants were parties to sale contracts that permitted them to include in their prices any increase in the severance taxes that they were required to pay on the oil or gas being sold. The court readily admitted that the pass-through prohibition affected the contractual obligations of the parties, but continued, stating, "it does not follow that the prohibition constituted a 'Law impairing the Obligations of Contract' within the meaning of the Contract Clause." The Court upheld the statute, holding that "the pass-through prohibition did not prescribe a rule limited in effect to contractual obligations as remedies, but instead imposed a generally applicable rule of conduct designed to advance 'a broad societal interest': protecting consumers from excessive prices."

vor, dismissing the claim of Chester L. Doucet. Doucet was working for Cactus International, Inc. on a *fixed platform* owned by ARCO under a drilling contract between ARCO and Cactus. Cactus secured Longshoremen's compensation for Doucet. ARCO has done nothing to secure such benefits. ARCO contends that it is immune from suit by Doucet under the exclusive remedy provisions of the Longshoremen's and Harbor workers' Compensation Act, relying on *Washington Metropolitan Area Transit Authority v. Johnson,* ── U.S. ──, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). It is true that *Washington Metropolitan* is distinguishable from this case on its facts. Yet this only begins the inquiry for this Court must look to the Supreme Court's rationale in deciding this case. *Washington Metropolitan* establishes that tort immunity under LSHWCA is imposed as a penalty for failure to honor one's obligations under the Act, not as a reward for honoring one's obligations. Thus, tort immunity is lost only when an employer or contractor fails to honor its obligation. The fact that a contractor may never be called upon to honor its contingent LSHWCA obligation does not appear to be a material one under *Washington Metropolitan.* Accordingly, the motion by Atlantic Richfield Company for summary judgment is GRANTED, and the claims of Chester L. Doucet and National Union Fire Insurance Company will be dismissed.

Opelousas, Louisiana, July 27, 1984.

### JUDGMENT

This matter came on for hearing before the Court, Honorable John M. Shaw, presiding, and the issues having been duly heard and a decision having been duly rendered,

It is ORDERED AND ADJUDGED that the plaintiff, Chester Louis Doucet, and the intervenor, National Union Fire Insurance Company, recover nothing from Atlantic Richfield Company, that the claims by the plaintiff and the intervenor against Atlantic Richfield Company be dismissed with

prejudice, that Atlantic Richfield Company's third party demand against Cactus International, Inc. be dismissed as moot, and that the defendant Atlantic Richfield Company recover of the plaintiff its costs of action.

Opelousas, Louisiana, July 27, 1984.