William **NESOM**

v.

**CHEVRON U.S.A., INC.**

Civ. A. No. 83–5298.

United States District Court,
E.D. Louisiana.

Dec. 24, 1984.

C. Edgar Cloutier (argued), Maurice de la Ronde Stouse, Christovich & Kearney, New Orleans, La., for Dickson Welding, Inc. and Liberty Mutual Ins. Co.

John T. Nesser (argued), Patricia Krebs, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for Chevron U.S.A., Inc.

WICKER, District Judge.

Plaintiff brought this lawsuit for injuries allegedly sustained by him on February 25, 1983 while working for Dickson Welding, Inc. (Dickson) aboard a Chevron fixed platform located on the Outer Continental Shelf. Chevron, a named defendant in the original demand, impleaded Dickson and its insurer, Liberty Mutual Insurance Company (Liberty), seeking contractual indemnification and costs of defense.

This matter is now before the Court on motions of Dickson and Liberty for summary judgment seeking dismissal of Chevron's claims.

After considering the briefs and arguments of counsel and the applicable law, the Court grants movers' motions in part for the following reasons to-wit:

Chevron's indemnity claim is based upon the following clause contained in the master service agreement entered into between Chevron and Dickson on February 1, 1977

Contractor agrees to defend and hold Company indemnified and harmless from and against any loss, expense, claim or demand for:

(a) Injury to or death of Contractor's employees or for damages to or loss of Contractor's property in any way arising out of or connected with the performance by Contractor of services hereunder; and

(b) Injury to or death of third persons or the employees of Company, or for damage to or loss of property of Company or of third persons, in any way arising out of or connected with the performance by Contractor of services hereunder, *unless caused solely by the negligence of Company; provided that if such injury, death, damage or loss is caused by the joint or concurrent negligence of Contractor and Company, each shall be liable for ½ of the loss, expense, claim, or demand resulting therefrom* (emphasis supplied).

On December 22, 1982, the parties entered into a service contract which contained identical indemnity clauses except omitted from Paragraph 8(b) is the last phrase "provided that if such injury, dam-

age or loss is caused by the joint or concurrent negligence of contractor and company, each shall be liable for one-half of the loss, expense, claim or demand resulting therefrom." [1]

In making its motion for summary judgment, the third party defendants make a four-prong attack on Chevron's impleader. The movants initially contend that Chevron's claim for contractual indemnity is unenforceable as a matter of law in light of the Louisiana Oilfield Indemnity Act ("Act"), LSA–R.S. 9:2780.

The language of the Louisiana Oilfield Indemnity Act [2] expressly provides that it is the intention of the legislature to declare null and void and against public policy any provision in any agreement which requires defense and/or indemnification for death or bodily injury. *Aucoin v. Pelham Marine, Inc.*, 593 F.Supp. 770 (W.D.La.1984). However, not all oilfield indemnity contracts are invalidated by the Act. A literal reading of the statute leads to the inescapable conclusion that the Act nullifies an oilfield indemnity agreement *only* to the extent that it purports to indemnify a party against the consequences of his own negligence. *Home Insurance Co. v. Garber Industries, Inc.*, 588 F.Supp. 1218 (W.D.La.1984). Thus, a contract wherein Dickson agrees to defend and/or indemnify Chevron against the consequences of Dickson's own fault remains unaffected by the Act.

The Court notes at this point, however, that the very language of paragraphs (a) and (b) of the Chevron/Dickson indemnity contract raises the question of whether the Act is even applicable to the current dispute. Paragraph (b) contains qualifying language [3] that is curiously absent from paragraph (a). The identical indemnity clause now in dispute was at issue in *Wiley v. Offshore Painting Contractors, Inc.*, 711 F.2d 602 (5th Cir.1983). There, the Fifth Circuit held that the excluding language of "unless caused solely ..." contained in paragraph (b) applied *only* to paragraph (b) of the indemnity contract. *Id.* at 612.

The *Wiley* court pointedly noted that Chevron failed to offer any explanation of why the specific language concerning sole or concurrent negligence was not used in *both* paragraphs. *Id.* Additionally, the court stated as follows:

Nor can Chevron offer any reasonable explanation of why it would expect or 'intend' the language of paragraph (a) to afford indemnity for Chevron's own negligence when this court has specifically held—some two years before the execution of the master service agreement between Chevron and Offshore Painting— that this identical language did not entitle Chevron to indemnity if the accident

---

1. The subsequent service contract was executed well after the September 11, 1981 effective date of the Louisiana Oilfield Indemnity Act.

2. Pertinent parts of the Act are as follows:

   A. ... it is the intent of the legislature by this Section to declare null and void and against public policy of the State of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee
   ....

   B. ... any provision contained in ... an agreement pertaining to a well for oil, gas, or water, or drilling for minerals ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or con-

current negligence or fault (strict liability) of indemnitee....

   C. ... the term agreement, as it pertains to a well for oil, gas, or water, or drilling for minerals ... as used in this section, means any agreement or understanding, written or oral, concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for materials ..., including but not limited to drilling, deepening, reworking, repairing, ... or otherwise rendering services in or in connection with any well drilled for the purpose of producing or excavating, constructing, improving, or otherwise rendering services in connection with any mine, drift, or other structure....

3. The words "unless caused solely by ..." (see author's emphasis in the quoted contract clause) are included in paragraph (b) but absent from paragraph (a) of the master service agreement.

was caused solely by Chevron's negligence.

*Id.* The court thus concluded that the contractual provision was ambiguous because of the different wording used in the two paragraphs. Therefore, there was no "clear indication" that the parties intended that Chevron would be indemnified under paragraph (a) for injuries to employees of the contractor caused by the negligence of Chevron. Consequently, Chevron was entitled to contractual indemnity under paragraph (a) *only* for the negligence of the contractor but not at all for its own sole or concurrent negligence. *Id.*

The facts of the present lawsuit, as in *Wiley*, likewise make only paragraph (a) applicable since the injured plaintiff was an employee of the contractor (Dickson). However, unlike the situation in *Wiley*, this Court is faced with two contracts instead of one: a master service agreement dated February 1, 1977 and a service contract dated December 22, 1982. Although paragraph (a) is identical, there is a substantial difference in the language of paragraph (b):

"Master Service Agreement"

(b) Injury to, or death of, third persons or the employees of Company ... in any way arising out of or connected with the performance by Contractor of services hereunder, *unless caused solely by the negligence of Company; provided that if such injury, death, damage or loss is caused by the joint or concurrent negligence of Contractor and Company, each shall be liable for one-half of the loss, expense, claim, or demand resulting therefrom.* (emphasis, author)

"Service Contract"

(b) Injury to, or death of, third persons or the employees of Company ... in any way arising out of or connected with the performance by Contractor of services hereunder, *unless caused by the negligence of Company.* (emphasis, author)

In drafting the service contract, Chevron chose to delete the language in paragraph (b) of the master service contract that expressly addressed situations involving concurrent negligence. The reasons for this deviation are unknown to this Court.

Although paragraph (a) rather than (b) is the governing clause under the facts of the present suit, it was the difference in the wording of those two paragraphs that led the *Wiley* court to rule as it did. This Court does not believe that the deletions made by Chevron from paragraph (b) of the service contract in any way undermines the holding of the *Wiley* court or warrants a departure by this Court from such holding. The ambiguity noted by the Fifth Circuit in *Wiley* is still present in *both* the master service agreement and the service contract despite the changes made by Chevron.

■ Thus, in accordance with the Fifth Circuit's ruling in *Wiley v. Offshore Painting Contractors, Inc., supra,* this Court is compelled to conclude as a matter of law that Chevron is *not* entitled to claim contractual indemnity for damages resulting from its own sole or concurrent negligence under paragraph (a) of either the master service agreement or the service contract. Instead, Chevron's sole avenue of relief under paragraph (a) is to claim indemnity for damages it has to pay due to the negligence of Dickson. And since the Louisiana Oilfield Indemnity Act bans *only* those indemnity agreements wherein the indemnitee seeks to be indemnified for his own sole or concurrent negligence, that statute is inapposite to paragraph (a) of the two indemnity contracts governing this dispute.

■ Movants' second point of attack on Chevron's impleader contests Chevron's claim that it (Chevron) is an insured under the policies of insurance provided Dickson by Liberty. A review of the pertinent policies by this Court did not reveal Chevron to be listed as a named insured at any point. Additionally, any attempt by Chevron to claim a stipulation pour autrui must be denied. Under Louisiana law, the key element in deciding whether the parties to a contract have entered into such a stipulation is the intent of the parties. The proper means used to include such a stipulation in an insurance contract is to *name* the third party as an additional insured. *St.*

*Julien v. Diamond M Drilling,* 403 F.Supp. 1256, 1259 (E.D.La.1975). Moreover, Louisiana law requires that the stipulation must be in writing and clearly express an intent to benefit the third party. *Logan v. Hollier,* 699 F.2d 758 (5th Cir. 1983). In view of the absence of these requisite elements from the present case, this Court finds that Chevron's claim is without merit.

■ The next aim of attack is directed to Chevron's claim that it has a right of direct action against Liberty under the Louisiana Direct Action Statute. In *Nations v. Morris,* 483 F.2d 577 (5th Cir.1973), the Fifth Circuit held that this statute is inapplicable to causes of action based upon occurrences on structures located on the Outer Continental Shelf. The court noted that to permit the enforcement of the Louisiana Direct Action Statute would be inconsistent with federal law. Chevron has made an extensive argument in its brief that since Dickson was contractually indemnified to Chevron, then Chevron should have a contractually derived direct action against Dickson's insurer. In the absence of any persuasive legal authority to buttress this argument, this Court does not find adequate grounds to depart from the stated rule of the Fifth Circuit in *Nations.*

■ The final attack addresses Chevron's contention that Dickson, in the following paragraph of the service contract, contractually agreed to provide insurance coverage for the "protection of" both Chevron and Dickson:

> For all operations performed by the Contractor hereunder, Contractor shall carry, at his expense for the protection of both Contractor and Company, Workmen's Compensation ... (thereafter naming several types of insurance coverage).

Chevron interprets the above provision to mean that Dickson should have provided Chevron with a contract of insurance to cover it for its *own* as well as Dickson's negligence. This interpretation runs counter to the prohibitions outlined in the Louisiana Oilfield Indemnity Act since it would do indirectly (via an insurance contract) that which the Act nullifies if done directly (via an indemnity contract). The Court finds that a far more realistic interpretation of the above clause (and one in line with the Louisiana Oilfield Indemnity Act) is that Dickson was to provide insurance coverage *only* for itself and to protect Chevron against the negligence of Dickson. Additionally, in *Chevron Oil Co. v. E.D. Walton Constr. Co., Inc.,* 517 F.2d 1119 (5th Cir.1975), the Fifth Circuit stated as follows:

> As drafter of the contract, Chevron could have provided a clear indication that the parties intended the result it argues for now. Where there is an ambiguity creating at least two reasonable constructions, that construction will prevail which is *least* favorable to the party who prepared the instrument.

Accordingly, this Court concludes that Chevron's claim that Dickson should stand in the shoes of an insurer due to its "failure" to provide insurance for the protection of Chevron is without merit.

Chevron, in response to movers' arguments, contends that summary judgment is inappropriate at this time since there are disputed material facts as to whether the injury was caused by the negligence of Dickson or Chevron. The motion before the Court is one for summary judgment on the issue of contractual indemnity, *not* for summary judgment on the issue of liability. Which party was negligent should have no bearing on whether the contractual indemnity provisions are valid. Therefore, Chevron's argument is irrelevant.

Next, Chevron makes a five-prong attack on the validity of the Louisiana Oilfield Indemnity Act in order to counter Dickson's claim that this Act nullifies the indemnity contract between Chevron and Dickson.

Among the several constitutional attacks directed by Chevron against the Act are that it (1) violates the Louisiana Constitution's prohibition against "special laws", and (2) violates Chevron's rights of equal protection and due process under the Con-

stitution of both the United States and Louisiana. Assuming arguendo that the Act is applicable to the facts of this case, the Court finds no merit to Chevron's contentions. *Bryant v. Platform Well Service, Inc.*, 563 F.Supp. 760 (E.D.La.1983).

■ Chevron next contends that the Act is inconsistent with federal statutory law on contractual indemnity. Chevron argues that although Section 905(b) of the Longshoreman's and Harbor Workers' Compensation Act expressly bans indemnity contracts in relation to *vessel* owners, the statute's silence in regard to *non*-vessel owners should be construed to permit such agreements. Consequently, any state law to the contrary (such as the Act) is preempted by federal law. Since Chevron has not cited any convincing legal authority to support this interpretation, this Court concludes that no inconsistency exists and state law should be followed.

■ Also included in Chevron's arsenal of constitutional attacks upon the Act is an argument that its application results in an impairment of contracts in violation of the United States and Louisiana Constitutions. The effective date of the Act is SEPTEMBER 11, 1981, the Dickson/Chevron master service agreement was entered on February 1, 1977, while the service contract was not entered into until DECEMBER 22, 1982. Since the latter contract was executed well after the effective date of the Act, there is no constitutional issue in regard to its validity under the Act. Chevron does argue, however, that application of the Act to the master service agreement results in an impairment of contract.

In *Marie Brenaman v. Davis & Sons*, No. 83–679 (E.D.La. October 12, 1983), Judge Arceneaux stated that master service agreements of the type now encountered contemplate the execution of some subsequent agreement such as a specific job contract. Judge Arceneaux concluded that "It is from the subsequent agreement that the correlative obligations spring. No obligations are imposed on either party by the master service agreement as such. A statutory nullification of the indemnity provisions therefor impairs no contractual obligations." This Court agrees that the master service agreement is merely a precursor that envisions a subsequent separate and independent contract to be perfected each time Chevron orders a specific job or service.

■ Finally, and in addition to its constitutional arguments, Chevron contends that the Act is inapposite because the scope of its proscriptive language does not cover the particular sandblasting services rendered by Dickson at the time of plaintiff's accident. The argument submitted is that the repairs done by Dickson were to areas of the drilling platform that did not affect the "well." Thus, the work was too far removed from the actual drilling operations to be covered by the Act.

The Court notes that in describing the types of services covered by the Act, the Louisiana Legislature employed language designed to give it the broadest possible meaning. A touch of common sense likewise dictates that in a fixed well operation there could be no drilling operation without the platform. Thus, the platform structure must be considered an integral part of the "well." Chevron's argument must be rejected as implausible.

## ATTORNEY'S FEES

■ Lastly, Chevron has made an elaborate argument that should it be absolved of any liability in this suit, it is entitled to indemnity for the expenses of its defense. The language contained in paragraph (a) of the indemnity contracts clearly provide for this. This Court has already determined that under Fifth Circuit interpretation of the indemnity language at stake here, the Louisiana Oilfield Indemnity Act is inapposite.

Prior to the enactment of the Act, the Fifth Circuit had occasion to address this issue in *Stephens v. Chevron Oil Co.*, 517 F.2d 1123 (5th Cir.1975). There, the court was faced with the following indemnity contract language:

... TO DEFEND AND HOLD COMPANY INDEMNIFIED AND HARMLESS FROM AND AGAINST ANY LOSS, EXPENSE, CLAIM OR DEMAND FOR....

In that suit, Chevron was absolved of all negligence. In interpreting the above clause, the Fifth Circuit held as follows:

> There is no sound reason why Chevron, who has committed no fault, must incur the cost of defending against this invalid claim, simply because the invalidity resulted from a lack of negligence on the part of Chevron. In the total absence of Chevron's negligence, the manifest intention of the parties was that Axelson would defend and indemnify Chevron against any work-connected claims.

Thus, the court concluded that Chevron had a legal right to be indemnified for the costs of defending the suit where it was found to be absent any negligence.

The movants have of course argued that the Louisiana Oilfield Indemnity Act *is* applicable to paragraph (a) of the presently disputed indemnity contracts and thus nullifies such provisions. They further urge that the *Stephens, supra,* holding is inapposite because it predates the effective date of the Act. The Court notes that there have been no reported decisions which have applied the *Stephens* rationale to post-Act indemnity contracts.

Assuming arguendo that the Act does in fact apply to paragraph (a) of the indemnity contracts now contested, the Court does not believe that the bottom line result will differ. The movants rely heavily on *Aucoin v. Pelham Marine, Inc.*, 593 F.Supp. 770 (W.D.La.1984) as standing for the proposition that the *Stephens* rule is no longer controlling over indemnity contracts subsequent to the Act. In *Aucoin*, Chevron filed a third party claim against the plaintiff's employer for indemnification of damages and defense costs. The plaintiff was injured while performing work as a longshoreman engaged in unloading of pipe from a vessel. Judge Hunter determined that Section 905(b) of the LHWCA was applicable and thus any agreement of indemnification between a longshoreman's

employer and a vessel was void. Although the court made its ruling based on 905(b), it nonetheless concluded that the Louisiana Oilfield Indemnity Act would likewise bar any indemnity of legal costs of Chevron by the plaintiff's employer. The court did take notice of the *Stephens* holding but noted that it "did not address nor mention the Louisiana Oilfield Indemnity Act ..." (which was not surprising since the *Stephens* decision pre-dated the Act by some six years). The *Aucoin* court went on to conclude that "... Chevron's claim for indemnity, together with attorney's fees and costs, are barred by both the Louisiana Oilfield Indemnity Act and the Longshoreman's and Harbor Workers' Compensation Act."

However, in the case of *Home Insurance Co. v. Garber Industries Inc.*, 588 F.Supp. 1218 (W.D.La.1984), the plaintiff was injured while working for his employer (the Contractor) on a fixed platform on the Outer Continental Shelf. The owner of the platform sought indemnity from the plaintiff's employer based on an indemnity clause in a workover contract. The employer defended by arguing that the clause was invalid under the Louisiana Oilfield Indemnity Act. The court determined that this was clearly a situation where the Act was applicable. In particular, the court took cognizance of Subsection (B) of the Act which states in part that an oilfield indemnity agreement:

> is void and unenforceable to the extent that it purports to or does provide for defense *or* indemnity against the negligence or other fault of the indemnitee.... (emphasis, author)

Based on the foregoing language, the *Garber* court concluded that the platform owner could *not* enforce the agreement to indemnify it against its own concurrent negligence. However, the court held that the plaintiff's employer/Contractor *must* indemnify *and defend* the platform owner *to the extent* that the agreement covers claims that are not occasioned by the negligence or other fault of the platform owner.

The court sought to clarify its holding by stating as follows:

> As a practical matter, this means only that Forest (the platform owner) will be entitled to its cost of defense from Garber and Mallard if the jury finds that Forest and the independent contractors directly responsible to Forest were *not* negligent or otherwise at fault. (emphasis, author)

In light of the factual similarity between *Garber* and the present suit, the Court finds that in this particular instance *Garber* is a more appropriate authority than the *Aucoin* decision. The *Aucoin* suit involved a longshoreman and a vessel rather than a fixed platform. The court made its decision based on Section 905(b) of the LHWCA. Thus, the discussion regarding the Louisiana Oilfield Indemnity Act was dicta at best. This Court agrees with the *Garber* rationale and accordingly holds that Chevron is entitled to indemnification of its defense costs in the event it is found to be free of any sole or concurrent negligence or fault. Furthermore, this Court holds as such irregardless of whether the Louisiana Oilfield Indemnity Act applies to paragraph (a) of the indemnity contracts now contested.

As a point of clarification, however, and assuming arguendo that the Act is applicable to paragraph (a) of the indemnity contracts now contested, this Court rejects as invalid under that Act any attempt by Chevron to claim that it is entitled to indemnification of its defense costs should it be found to be solely or concurrently negligent or at fault. Chevron has attempted to take the *Garber* holding one step beyond that which the court did itself by arguing that should Dickson be found only partially liable, then it must indemnify Chevron's defense costs to the extent of that percentage of negligence. While this is an interesting and novel approach, this Court's reading of the *Garber* opinion does not indicate that it invoked such a "comparative indemnification" theory. The *Garber* court only addressed itself to situations where the platform owner was found not to be at fault *at all*. Furthermore, that holding is entirely consistent with the Fifth Circuit's holding in *Stephens v. Chevron Oil Co., supra.* Thus, if Chevron is found to be concurrently (or solely) negligent or at fault, then it must bear the brunt of its defense costs entirely on its own.

Accordingly,

IT IS ORDERED that the Motion of Dickson Welding, Inc. and Liberty Mutual Insurance Company for Summary Judgment is hereby GRANTED to the extent that Chevron may not be indemnified for damages or defense costs for its own sole or concurrent negligence or fault.