Richard Joseph DOUCET,
Plaintiff-Appellant,

v.

GULF OIL CORPORATION,
Defendant-Appellee.

Richard Joseph DOUCET, Plaintiff,

v.

GULF OIL CORPORATION,
Defendant-Third Party
Plaintiff-Appellee,

v.

DANOS & CUROLE MARINE
CONTRACTORS, INC., Third
Party Defendant-Appellant,

Richard Joseph DOUCET,
Plaintiff-Appellee,

v.

GULF OIL CORPORATION, Defendant-
Third Party Plaintiff-Appellee
Cross-Appellant,

v.

DANOS & CUROLE MARINE CON-
TRACTORS, INC., Third Party
Defendant-Appellant Cross-Appellee.

Nos. 83–3711, 84–3434 and 84–3612.

United States Court of Appeals,
Fifth Circuit.

Feb. 20, 1986.
Rehearing Denied April 25, 1986.

Henderson, Hanemann & Morris, J. Mark Graham, Joseph A. Reilly, Jr., Houma, La., for Danos & Curole Marine Contractors, Inc.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Grady S. Hurley, Rob-

ert M. Contois, New Orleans, La., for Gulf Oil Corp.

Guy E. Wall, New Orleans, La., Joshua A. Tilton, Baton Rouge, La., Kevin A. Galatas, New Orleans, La., for amicus-Tenneco.

Before RUBIN and REAVLEY, Circuit Judges, and POLOZOLA *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

A roustabout nominally employed by a contractor sued the oil company for whom the contractor had agreed to provide labor services on theories of negligence and strict liability for injuries allegedly received while working on the oil company's offshore production platform. The jury found that the oil company was the employer of the roustabout because it had borrowed his services, and, hence, was shielded from tort liability. Ruling on third-party demands for indemnification and costs of defense, the district court dismissed the oil company's claim against the contractor and the contractor's counterclaim for recoupment of compensation paid the roustabout.

We hold that an oil company subject to the Longshoremen's and Harbor Workers' Compensation Act may invoke the borrowed-employee doctrine in defense of a tort claim by a worker nominally employed by a labor-services contractor. Because, however, the trial court told the jury that, if it decided that the injured worker was the borrowed employee of the defendant oil company, he would be paid worker's compensation by the oil company, we reverse the judgment entered on a jury verdict for the defendant and grant a new trial.

Considering the third-party demands, we hold that the contract between the oil company and the labor-services contractor is subject to the Louisiana Oilfield Indemnity Act, and, therefore, is void to the extent that it requires the contractor to indemnify the oil company and defend it against claims attributable to the oil company's own negligence. Because under the law of this circuit the determination whether a defense is due must be made at the outset of litigation by reference solely to the allegations of the pleadings and the contractual provisions, and the roustabout's complaint alleged that the oil company was itself negligent and strictly liable, we affirm the dismissal of the oil company's third-party complaint.

I.

Gulf Oil Corporation engaged Danos & Curole Marine Contractors in 1980 to furnish it with general oil field labor and to provide other services. The contract gave Danos & Curole authority to control and direct the performance of details of the work. Danos & Curole employed Richard Joseph Doucet as a roustabout, an oil field laborer. After Doucet had worked on other jobs, Danos & Curole assigned him to work as a roustabout/assistant pumper on offshore platforms in a Gulf Oil field. Doucet testified that he worked under the supervision of Bryan Utech, the Danos & Curole field supervisor, but, when neither Utech nor the other Danos & Curole supervisor was present, he took orders from the Gulf employee who was working as a pumper on the same platform. After working on this assignment for a month, Doucet was injured. He received compensation benefits from Danos & Curole's insurer under the Longshoremen's and Harbor Workers' Compensation Act.[1]

Doucet then sued Gulf for maritime tort. Gulf defended by arguing that Doucet was its borrowed employee and that his exclusive remedy against Gulf was, therefore, compensation under the Act.[2]

Some of the evidence pointed to Danos & Curole as Doucet's real and not merely nominal employer. Danos & Curole determined when its employees would receive

---

* District Judge of the Middle District of Louisiana, sitting by designation.

1. 33 U.S.C.A. §§ 901–950 (West 1986).

2. *Id.* at § 905(a).

wage increases. It fixed each employee's work schedule. Danos & Curole employees did not attend Gulf safety meetings. Danos & Curole provided all of Doucet's personal equipment. Gulf had not trained Doucet. There was, however, contradictory evidence that: Doucet worked directly under the supervision of the Gulf operator/pumper; his work schedule was set by Gulf and Gulf certified the amount of wages due him; Gulf retained authority to discharge him from the platform if Doucet failed to comply with instructions from the Gulf supervisor; Gulf was required to approve any increase in his salary; Gulf provided transportation offshore; and Gulf supplied the tools and materials necessary to do his job as a pumper's helper.

During that part of the jury charge explaining the borrowed-employee rule, the court twice referred to Gulf's possible liability to Doucet for compensation benefits. First it told the jury:

Thus, to sustain its contention, Gulf Oil must show, by a preponderance of the evidence, that Doucet was its borrowed employee. If it is able to sustain that showing, then Gulf's liability is limited to compensation under the Longshoremen's and Harbor Workers' Compensation Act, because in that case Mr. Doucet [sic] exclusive remedy is under that Act and as you all have heard from the testimony that has been adduced, has been paid and continues to be paid.

The court also instructed the jury:

If you find that Mr. Doucet was, indeed, the borrowed employee of Gulf, you need not continue your deliberations, for Mr. Doucet would then receive compensation under the Longshoremen and Harborworkers Act from Gulf as provided by federal statute.

It later stated:

It is possible, under the law, to be an employee of both Gulf and Danos & Curole. In other words, based on your evaluation of the facts, you could find that both Gulf and Danos & Curole had assumed the responsibility of an employer toward Doucet at the time of his alleged injury.... I am merely telling you that you do not have to choose between Gulf and Danos & Curole as Doucet's employer.

Immediately after completing the charge, the judge instructed the jury to retire and begin deliberating. Before doing so, he did not ask if counsel had any objections to the instructions, nor did counsel for any party intervene to request an opportunity to object. However, as soon as the jury retired the judge solicited counsels' objections to the charge. Counsel for Doucet objected both to the court's charge that an employee may simultaneously have several employers and to its instruction that Gulf would pay Doucet compensation if the jury found Doucet to be Gulf's borrowed employee.

In response to a special interrogatory, the jury found that Doucet was Gulf's borrowed employee. On this appeal, Doucet contends that, under the Compensation Act as amended in 1984, the borrowed-employee doctrine is no longer a defense to a tort claim. He also reasserts the objections made in the trial court to the jury charge, adding an additional alleged error: the trial court's failure to instruct the jury that Gulf had a duty to comply with section 932 of the Compensation Act by securing workmen's compensation insurance for Doucet if it sought litigious immunity.

The contract between Gulf and Danos & Curole required Danos & Curole to indemnify Gulf "against all costs, expenses, and attorney's fees incurred by Gulf in the defense of ... causes of action ... on account of personal injuries ... whether arising out of negligence on the part of Gulf or otherwise, including ... any theory of strict liability, ... arising out of the work performed by [Danos & Curole] hereunder...." When Doucet sued, Gulf demanded that Danos & Curole defend the suit. Danos & Curole refused to defend, prompting Gulf to file its third-party complaint. After initially granting Gulf's demand for contractual indemnity, the district court reversed itself and dismissed the third-party complaint. The court also denied Danos & Curole's counterclaim

against Gulf for reimbursement of the compensation it had paid Doucet.

## II.

■ Doucet first argues that the borrowed-servant doctrine is contrary to the 1984 amendments to the Compensation Act and to the statute's underlying policy, and, hence, should not be applied so as to shield a general contractor such as Gulf from liability in tort. The Act makes every employer liable for compensation regardless of fault.[3] It also provides that this liability "shall be exclusive and in place of all other liability of" the employer to the employee.[4] As rewritten by the recent amendments, section 904(a) of the Act provides that a "contractor," such as Gulf, who employs a "subcontractor," such as Danos & Curole, is liable for compensation "only if such subcontractor fails to secure the payment of compensation." The amendments also added the following sentence to section 905(a):

> For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payments of compensation as required by section 904 of this title.

Thus, Doucet argues, Gulf could have become Doucet's employer, responsible for compensation and shielded from tort liability, only if Doucet's nominal employer, Danos & Curole, had failed (as it did not) to secure compensation.

This circuit has consistently held that, if an oil company assumes so much control over the activities of a person who is nominally the employee of the company's subcontractor as to make that person in effect its borrowed employee, the company is shielded by the exclusivity of the compensation remedy from tort liability.[5] This was not based on a specific provision of the Compensation Act but stemmed from a reverse application of the *respondeat superior* rule, the rule that an employer is responsible not only for the acts of those persons on his payroll but for the acts of those over whom he has such control that they are in effect his borrowed servants.[6] Thus a rule designed to impose tort liability on a person in control of an employee, albeit a borrowed one, became a defense against tort liability to the controlled employee.

The 1984 amendments did not abolish this defense by implication. Congress' purpose in amending the Act was to overrule the Supreme Court's decision in *Washington Metropolitan Area Transit Authority v. Johnson.*[7] For reasons we have recently fully discussed in *West v. Kerr-McGee Corp.*, we held:

> The legislative history of the 1984 amendments unambiguously demonstrates that Congress's *sole* purpose in amending § 904(a) and § 905(a) was to overrule *WMATA*, and not to amend the borrowed-servant doctrine or otherwise modify LHWCA law.[8]

If the question were open, we might agree with Judge Tate's concurring opinion in *West:*

> It makes no functional sense to hold that a contractor, immune under the Act from compensation remedy for injuries received by a subcontractor's employees, is nevertheless also entitled to tort immunity because of the exclusive nature of the compensation remedy accorded, not at all against the contractor, but solely against the subcontractor.[9]

---

3. 33 U.S.C.A. §§ 904(a), (b) (West 1986).

4. *Id.* at § 905(a).

5. *Hebron v. Union Oil Co. of Cal.,* 634 F.2d 245 (5th Cir.1981); *Gaudet v. Exxon Corp.,* 562 F.2d 351 (5th Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978); *Ruiz v. Shell Oil Company,* 413 F.2d 310 (5th Cir.1969).

6. *Gaudet,* 562 F.2d at 355–57.

7. 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984) (*WMATA*).

8. 765 F.2d 526, 530 (5th Cir.1985) (emphasis added).

9. *Id.* at 533 (Tate, J., concurring).

But circuit authority culminating in *West* fixes the law of the circuit.

### III.

We turn to the court's jury instructions. Doucet contends that the court improperly informed the jury that, if it found Gulf to be Doucet's borrowed employer, Gulf would pay him compensation pursuant to the Act. At the outset we note that even an argument by counsel that the plaintiff in a tort suit will receive worker's compensation is so prejudicial as to warrant a new trial, if the objection is properly made, because it may adversely affect the jury's deliberations on status [10] or violate the collateral source rule.[11] In this case, the court first mentioned the fact that Doucet was receiving compensation benefits from Danos & Curole's insurer when instructing the jury about the issues in the case at the start of the trial. Each party thereafter referred to his receiving compensation. Doucet did not object either to the court's initial reference to compensation or to the reference by opposing counsel. Nonetheless, his failure to object at that time did not waive his right to do so as to the court's jury charge if erroneous.

The court's instruction was erroneous for two reasons: as stated above, it interjected improper considerations into the jury deliberations, and it was factually incorrect. Doucet was already receiving compensation from Danos & Curole's insurer. Therefore, section 904(a) [12] of the Compensation Act shielded Gulf from liability for compensation. As Judge Tate recently stated in his concurrence in *West v. Kerr-McGee Corp.:* [13] "[S]ince the subcontractor ... *did* secure the payment of the [Compensation] Act's benefits to its injured employees, the contractor ..., the present defendant, is not liable for compensation benefits."

Doucet is not estopped to raise this error on appeal by his failure to object before the jury retired. Although Federal Rule of Civil Procedure 51 requires a party who wishes to preserve error to object before the jury retires, it also provides: "Opportunity shall be given to make the objection out of the hearing of the jury." The rule's purpose is to prevent unnecessary retrials by forcing parties to bring their objections to the attention of the judge in time that he may have an opportunity to correct his charge if he is in error.[14] Doucet voiced his objection to the charge at the time the court called for objections, after it had instructed the jury. The district court should not have allowed the jury to retire to its deliberations before giving counsel the opportunity to object. As Professor Wright and Miller observe, "There can be no final retirement of the jury until opportunity has been afforded for making objections. If the jury is excused to afford an opportunity to object, it should be admonished not to begin deliberating until further advised by the court." [15] Having allowed the jury to deliberate, the court made no effort to correct its error by recalling the jury and giving it further instructions. We conclude that the court's instruction was erroneous and that, under the circumstances, Doucet's objection was timely because it was made as soon as the court gave counsel a chance to object. We, therefore, reverse the verdict in favor of Gulf and remand Doucet's claims for trial.

Doucet also contends that the court improperly instructed the jury that he could

---

**10.** *See, e.g., Tipton v. Socony Mobil Oil Co.,* 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963).

**11.** *Bourque v. Diamond M. Drilling Co.,* 623 F.2d 351 (5th Cir.1980).

**12.** 33 U.S.C.A. § 904(a) (West 1986) provides in part: "In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation."

**13.** 765 F.2d 526, 533 (5th Cir.1985) (Tate, J., concurring).

**14.** *Ebanks v. Southern Ry. Co.,* 640 F.2d 675, 679 n. 6 (5th Cir.1981); *Wallace v. Ener,* 521 F.2d 215 (5th Cir.1975).

**15.** 9 C. Wright & A. Miller, Federal Practice and Procedure § 2553, at 634 (1971) (citations omitted).

simultaneously be the employee of both Gulf and Danos & Curole. He argues that, when the borrowed-servant doctrine is invoked either as a means of imposing liability on an employer responsible for the acts of his borrowed employee, or as a means of shielding an employer from tort liability as argued in this case, the employee's relationship with his nominal employer must temporarily terminate.[16] In view of the fact that the verdict must be set aside on other grounds, we need not decide whether this observation was correct or whether, if not, it was prejudicial.

Doucet also objects to the district court's failure to instruct the jury that Gulf must comply with section 32 of the Compensation Act by securing workmen's compensation insurance to be shielded from tort liability. Doucet did not make this objection at trial and is foreclosed by Federal Rule of Civil Procedure 51 from raising it now.[17] Moreover, given our conclusion that the borrowed-servant doctrine survives the 1984 amendments to the Compensation Act, the proposed instruction would have been improper.

## IV.

■ The Louisiana Oilfield Indemnity Act,[18] adopted in 1981, invalidates a provision in an indemnity contract only "to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee...." The master service con-

tract between Gulf and Danos & Curole provides that Danos & Curole will defend and indemnify Gulf from all claims asserted by Danos & Curole personnel, regardless of Gulf's negligence or fault. Hence, the contract would be invalidated by the Louisiana Act, if at all, only to the extent that it permits Gulf to seek indemnity against "loss" or liability for bodily injury "caused by" or "arising out of" the negligence or fault of Gulf.

If the Act is applicable, however, Gulf would not be entitled to reimbursement for its costs of defense even if, on remand, it should successfully defeat Doucet's claims. In two recent cases we have held that under Louisiana law the determination whether a defense is owed turns on the allegations of the complaint.[19] In this case, Doucet's pleading alleged that Gulf was liable under theories of negligence and strict liability. The anti-indemnity act declares "null and void ... any provision in any agreement which requires defense" in a lawsuit premised on the negligence or strict liability of the indemnitee.

Danos & Curole contends that the Louisiana Act is applicable to contracts on the outer continental shelf and renders this defend-indemnify provision invalid. Gulf in turn contends that: (1) the Louisiana Act does not apply to operations on the outer continental shelf undertaken pursuant to a federal lease; (2) if the statute is applicable, it is inconsistent with federal law and thereby fails to satisfy the requisite of the Outer Continental Shelf Lands Act;[20] (3) if applicable and not inconsistent, the statute cannot be applied retroactively so as to affect the contract between Gulf and Da-

**16.** *Standard Oil Co. v. Anderson,* 212 U.S. 215, 224, 29 S.Ct. 252, 255, 53 L.Ed. 480, 485 (1909); *Ruiz v. Shell Oil Co.,* 413 F.2d 310, 313 (5th Cir.1969); *Kiff v. Travelers Ins. Co.,* 402 F.2d 129, 132 (5th Cir.1968). *Contra Spinks v. Chevron Oil Co.,* 507 F.2d 216 (5th Cir.1975); *Oilfield Safety, Etc. v. Harman Unlimited,* 625 F.2d 1248 (5th Cir.1980).

**17.** *See Gideon v. Johns-Manville Sales Corp.,* 761 F.2d 1129, 1142 (5th Cir.1985); *Rojas v. Richardson,* 703 F.2d 186 (5th Cir.), *reh'g granted,* 713 F.2d 116 (5th Cir.1983); *Jenkins v. General*

*Motors Corp.,* 446 F.2d 377 (5th Cir.1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972).

**18.** Oilfield Indemnity Act of 1981, Acts 1981, No. 427, codified at La.R.S. § 9:2780 (West Supp.1985).

**19.** *Knapp v. Chevron U.S.A., Inc.,* 781 F.2d 1123, 1127–29, 1131 (5th Cir.1986); *Sullen v. Missouri Pacific RR. Co.,* 750 F.2d 428 (5th Cir.1985).

**20.** 43 U.S.C. § 1333(a)(2)(A) (1982).

nos & Curole which was entered into before the effective date of the legislation; (4) the Louisiana Act is unconstitutional; and (5) the district court was without jurisdiction to withdraw its original decision once Danos & Curole docketed its appeal from the judgment in the circuit court.

### A.

Gulf contends that the Louisiana Act was not intended to apply extra-territorially and therefore does not apply to this accident which occurred on the outer continental shelf. The Louisiana statute is silent on whether it was intended to apply offshore. Its lack of specificity is not decisive even if purposeful. If the statute is applicable, it becomes so not by virtue of Louisiana's intention that it reach contracts for offshore work, but by virtue of the Outer Continental Shelf Lands Act, which adopts state law as surrogate federal law for the shelf to the extent state law is "applicable and not inconsistent with this subchapter or with other Federal laws and regulations." [21] The Louisiana Act was intended to govern the type of indemnity contract relating to the work for which Gulf retained Danos & Curole.[22] Unless it is made inapplicable for those reasons specified in the federal Shelf Lands Act, the Louisiana Act, by virtue of the federal Act, applies to contracts for services on the outer continental shelf [23] and controls the Gulf-Danos & Curole contract.

### B.

The Shelf Lands Act provides that employees injured on the outer continental shelf "shall be [entitled to benefits] payable under the provisions of the Longshoremen's and Harbor Worker's Compensation Act." [24] We have held that the Compensation Act is the complete source of rights of workers injured on fixed platforms on the outer continental shelf against their employers.[25] Section 905(b) of the Compensation Act proscribes indemnity contracts between vessels and employers; section 905(c) removes section 905(b)'s proscription to the extent that indemnity agreements between vessels and employers are reciprocal.

Gulf argues, therefore, that the exclusivity of the Compensation Act and its failure to address the type of indemnity agreement involved in this case, make the Act inconsistent with the Louisiana Act. This argument has just been rejected by this court in *Knapp v. Chevron USA, Inc.*[26] The Compensation Act neither expressly permits nor forbids contractual indemnity agreements between non-vessels and compensation-paying employers. This silence is a gap in federal law that, according to the Shelf Lands Act, is to be "filled" by state law governing such indemnity contracts.[27]

■ The Louisiana Act does not conflict with federal common law. Gulf's reliance on the Supreme Court's decision in *United States v. Seckinger* [28] as creating such a conflict is misplaced. *Seckinger* held that an indemnity clause in a contract between the federal government and a contractor required the contractor "to indemnify the United States [only] to the full extent that [the contractor's] negligence, if any, contributed to the injuries to the employee," [29] when the contractor and the government

**21.** *Id.*

**22.** *See supra* text following note 18.

**23.** *See Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969); *Knapp v. Chevron USA, Inc.,* 781 F.2d 1123 (5th Cir.1986).

**24.** 43 U.S.C. § 1333(b) (1982).

**25.** *Nations v. Morris,* 483 F.2d 577, 588 (5th Cir.), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973).

**26.** 781 F.2d 1123, 1130–31 (5th Cir.1986).

**27.** *See Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).

**28.** 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).

**29.** *Id.* at 215, 90 S.Ct. at 887, 25 L.Ed.2d at 235.

were joint tortfeasors. The Court imposed this joint liability on the basis of comparative negligence, rejecting the government's position that it was entitled to indemnification for damages resulting from the government's own negligence. The Court, therefore, interpreted the contract consistently with our application of the Oilfield Indemnity Act not to embrace liability for the indemnitee's negligence.

### C.

■ Gulf's next line of defense is that the Oilfield Indemnity Act cannot be applied retroactively so as to partially invalidate a contract executed before the enactment of the anti-indemnity statute.

The contract between Gulf and Danos & Curole is labelled a "blanket contract." It covers "any kind of work [that Danos & Curole] may be requested to perform from time to time for Gulf ... from May 16, 1980 to May 16, 1982, and as long thereafter as necessity for same continues...." When the Louisiana legislature adopted the anti-indemnity statute in 1981, it provided that the Act, by its terms, did not apply to a contract executed before the effective date of the Act *if* the contract governed a "specific terminable performance of a job or activity." [30] The Act, however, does apply to "agreements ... which are designed to provide indemnity to the indemnitee for all work performed between the indemnitor and the indemnitee in the future. *This specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name.*" [31] The statute exempts only contracts governing "a specific terminable performance of a specific job or activity" that were executed before the effective date of the statute. The Gulf-Danos & Curole contract is not of that kind and, hence, is not exempted by the statute.

### D

The next bastion in Gulf's Maginot Line is the alleged unconstitutionality of the Louisiana Act on the ground that it denies Gulf the equal protection of the laws and violates the contract clause of both the United States and the Louisiana state constitution. As we fully explained in *Knapp*,[32] this contention is without merit.

### E.

■ Gulf lastly argues that the district court was without jurisdiction to withdraw its order granting Gulf's third-party demand for indemnity. Federal Rule of Civil Procedure 54(b) resolves this issue. It states: "the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating *all* the claims and the liabilities of *all* the parties." (Emphasis added.) The original order was *not* a final judgment because an incidental action—Danos & Curole's counterclaim for recoupment of compensation benefits it had paid Doucet—was still pending. Because the judgment was not final, it was nonappealable,[33] and the attempted notice of appeal from that order did not divest the district court of jurisdiction to withdraw or modify the order. The revised order was a final judgment and the appeal from it cured the defects in the premature appeal.[34]

### V.

We also reverse the district court's order dismissing Danos & Curole's counterclaim against Gulf. Although Danos & Curole's workmen's compensation policy did contain a waiver of subrogation in favor of Gulf, section G of the Oilfield Indemnity Act [35] deprives the waiver of effect.

### VI.

For the reasons set out above, we REVERSE the judgment in favor of Gulf on

---

**30.** La.R.S. § 9:2780(I) (West Supp.1985).

**31.** *Id.* (emphasis added).

**32.** At 1129–30.

**33.** 28 U.S.C. § 1291 (1982).

**34.** *Jetco Elec. Ind. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973).

**35.** La.R.S. § 9:2780(G) (West Supp.1985).

the claims of Doucet and Danos & Curole, and we REMAND such claims for trial. We AFFIRM the district court's order dismissing Gulf's third-party demands against Danos & Curole.