829 F.2d 341
 SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
The AMERICAN BOARD OF TRADE, INC., Arthur N. Economou,
Phyllis H. Economou, and the American Board of
Trade Service Corp., Defendants,
The American Board of Trade, Inc., and the American Board of
Trade Service Corp., Defendants-Appellees,
Arthur N. Economou and Phyllis H. Economou, Defendants-Appellants.
Appeal of Nira Properties, Ltd.
 Nos. 1660, 1692 and 1720, Dockets 87-6170, 87-6188 and 87-6198.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 10, 1987.
Decided Sept. 22, 1987.
 
 Robert S. Smith, New York City (Clyde Allison, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for appellant Nira Properties, Ltd.
 Milton S. Gould, New York City (Eric P. Wainer, Peter C. Neger, Shea & Gould, New York City, of counsel), Special Master and Receiver of defendants-appellees The American Bd. of Trade, Inc., and The American Bd. of Trade Service Corp.
 Arthur N. Economou, New York City, defendant-appellant pro se.
 Before WINTER and MAHONEY, Circuit Judges and STEWART,* District Judge.
 WINTER, Circuit Judge:
 
 
 1
 These are expedited appeals from orders issued by Judge Kram. In the underlying proceedings, the district court appointed Milton S. Gould to serve as receiver of defendants The American Board of Trade, Inc. and The American Board of Trade Service Corp., and charged him with the task of liquidating the assets of these companies. One such asset is a lot and seven-story building at 9-11 South William Street in Manhattan. Originally built as the headquarters of Lehman Brothers, the property was purchased by The American Board of Trade Service Corp. in April 1980 for $1,475,000. In October 1986, an appraiser retained by Mr. Gould estimated that the property had a basic value of $3,500,000 and carried with it transferable development rights worth approximately $520,000. Mr. Gould subsequently recommended to the district court that the building be sold, and the district court agreed.
 
 
 2
 Between November 1986 and March 1987, Mr. Gould contacted a number of persons active in New York City's commercial real estate market in an effort to obtain reasonable bids for the South William Street building. He rejected several offers ranging between $1,500,000 and $2,000,000 because they fell far below the appraised value of the properties. Eventually, in order to stimulate higher offers, Mr. Gould negotiated a contract to sell the property to Leon Birnbaum and Samuel Mindel for $2,800,000. This contract was expressly made subject to the approval of the district court and to the receipt of higher offers. The court scheduled a hearing on May 13, 1987 to confirm the sale of the building to Birnbaum and Mindel but announced that "higher or better offers" would be received at the hearing, "provided, however, that [each] higher bid to purchase the Premises is greater than $2,800,000.00 and shall be in accordance with the procedures set forth herein...." The order also specified that "[i]n the event of a default by the successful bidder, and subject to the terms of the [contract with Birnbaum and Mindel], the Premises shall then be offered for sale to the next highest bidder...." In addition, the order required the bidder to tender a bank check payable to the Receiver for ten percent of the bidder's first bid. These terms were publicly advertised.
 
 
 3
 Appellant Nira Properties, Ltd. placed the first bid at the hearing on May 13, offering $2,850,000. Nira made no further bids, but the auction immediately became a contest between 40 Equities Associates and Birnbaum and Mindel. Eventually, 40 Equities emerged as the highest bidder, offering $4,050,000; Birnbaum and Mindel's offer of $4,000,000 was the runner-up. The district court asked the successful bidder to present the Receiver with a check for ten percent of its initial bid and to tender the balance of its downpayment on the next day. Richard Carroll, 40 Equities' representative at the auction, accordingly presented to Mr. Gould an official check drawn on Marine Midland Bank in the amount of $300,000.
 
 
 4
 Although the order to show cause specified that bidders would be required to tender checks payable to Mr. Gould, 40 Equities' check was payable to Mr. Carroll, its representative at the auction. After Nira objected to 40 Equities' check on the ground that it was payable to the wrong payee, the district court announced that it would "continue the bidding until 2:00 tomorrow afternoon," and that it was "not closing the bidding under the circumstances." All checks, including one submitted by Nira in connection with its bid, were returned to the parties who had tendered them.[1]
 
 
 5
 On the following day, May 14, Nira did not appear. Representatives from 40 Equities and from Birnbaum and Mindel did appear but both withdrew their bids. Because no other bidders were in attendance, the district court declared the auction "a nullity" and announced that "we are again going to advertise the property as we did formerly." On June 3, Nira moved for an order that would both vacate the district court's invalidation of the auction and confirm the sale of 9-11 South William Street to Nira for $2,850,000. This motion was denied by an order of the district court on June 17. On June 29, Nira filed a notice of appeal from both this order and the district court's oral order of May 14. Subsequently, on July 1, the district court held a second auction, at which Birnbaum and Mindel made the highest bid at $4,100,000. The district court accepted this bid, and on July 15 confirmed the sale of the South William Street building to Birnbaum and Mindel. On July 23, Nira filed a notice of appeal from the confirmation order. Defendants Arthur and Phyllis Economou have also appealed from this order.[2]
 
 
 6
 In its first appeal, Nira contends that the district court erred when it invalidated the first auction and when it later refused to direct the Receiver to convey the South William Street building to Nira. In its second appeal, Nira contends that its notice of appeal of June 29 divested the district court of jurisdiction both to hold a second auction on July 1 and to confirm the sale of the property to Birnbaum and Mindel. In response, the Receiver argues that Nira's first appeal should be dismissed because the district court's orders of May 14 and June 17 were not appealable final orders under 28 U.S.C. Sec. 1291 (1982). The Receiver also argues that, because these orders were not appealable, Nira's notice of appeal of June 29 did not divest the district court of jurisdiction to conduct the second auction. For the most part, we agree with the Receiver.
 
 
 7
 Both Nira and the Receiver agree that "orders confirming or refusing to confirm judicial sales are considered final and appealable under 28 U.S.C. Sec. 1291." This statement, however, is not entirely accurate. Certainly, an order confirming a judicial sale is final and appealable under Section 1291. See, e.g., Citibank, N.A. v. Data Lease Fin. Corp., 645 F.2d 333, 337 (5th Cir. Unit B 1981). However, there is also a substantial body of authority, with which we agree, holding that "a district court order vacating a judicial sale confirmation and requiring a resale is not final for purposes of appellate review." Levin v. Baum, 513 F.2d 92, 94 (7th Cir.1975) (Stevens, J.); see also Butterfield v. Usher, 91 U.S. (1 Otto) 246, 248, 23 L.Ed. 318 (1875). Such an order is not final and appealable because it does not conclusively dispose of the property; as far as the property is concerned, "the entire proceeding is still pending in the district court." Levin, 513 F.2d at 96. Under this rule, the district court's orders of May 14 and June 17 are not final orders appealable under Section 1291. Even if Judge Kram's orders could be characterized as refusals to confirm, she unambiguously directed the Receiver to conduct a second auction. The orders thus did not even purport to dispose of the property conclusively.
 
 
 8
 Moreover, we cannot agree that the district court's orders of May 14 and June 17 were appealable under 28 U.S.C. Sec. 1292(a)(2) (1982), which grants us "jurisdiction over appeals from ... [i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." Neither the district court's declaration in open court on May 14 nor its order of June 17 may properly be characterized as orders refusing to direct a judicial sale or disposal of the South William Street property. The district court's May and June orders merely involved the conduct of an auction, which the district court had invalidated because of the lack of outstanding bids. Because Nira's bank check had been returned to it on May 13, Nira was not in compliance on May 14 with the very rule that it had sought to enforce against 40 Equities. Nira's failure to attend the proceedings on May 14 was a withdrawal from the auction. Therefore, "[t]he order[s] appealed from dealt with an administrative matter within the discretion of the district court, and [do] not fall within that class of interlocutory orders from which an appeal may be taken under [Section 1292(a)(2) ]." Belleair Hotel Co. v. Mabry, 109 F.2d 390, 391 (5th Cir.1940). Accordingly, we dismiss Nira's first appeal for lack of jurisdiction.
 
 
 9
 We next address the appeals from the confirmation order of July 15. Although the filing of a timely and sufficient notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam), the filing of a notice of appeal from an order that is not appealable does not divest the district court of such jurisdiction. See, e.g., Doucet v. Gulf Oil Corp., 783 F.2d 518, 526 (5th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986); Ore & Chem. Corp. v. Stinnes Interoil, Inc., 611 F.Supp. 237, 239 (S.D.N.Y.1985). Because we lack jurisdiction to entertain Nira's first appeal, the corresponding notice of appeal of June 29 did not divest the district court of jurisdiction to conduct the second auction and to confirm the sale to Birnbaum and Mindel.
 
 
 10
 Finally, with regard to the merits of the confirmation, the district court clearly did not abuse its broad discretion. A "confirmation or refusal to confirm a sale only will be overturned in extreme cases if there has been an abuse of discretion." In re Chung King, Inc., 753 F.2d 547, 549 (7th Cir.1985). Neither Nira nor Mr. Economou makes any serious contention that the sale of the South William Street building to Birnbaum and Mindel was seriously defective.[3] We therefore affirm the confirmation order.
 
 
 
 *
 The Honorable Charles E. Stewart, Jr., United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The notice of hearing expressly provided that the requirement of a check payable to Mr. Gould could be "modified or waived by the Court." In addition, Mr. Gould informed the district court that bidders in real estate auctions typically bring checks that are made payable to themselves and are endorsed to the appropriate payee in the event of a successful bid. The district court, however, chose not to waive the requirement that bidders' checks be made payable to Mr. Gould
 
 
 [2]
 The Economous filed a notice of appeal on August 6, 1987, only four days before Nira's appeals were scheduled to be heard before this court. On August 8, Mr. Economou delivered a letter to this court urging that he be allowed to participate in the scheduled proceedings. At oral argument on August 10, we granted the Economous leave both to intervene in these appeals and to submit by August 14 a letter brief, with no limitations on length or content, in support of their appeal. We also ordered that the Economous' appeal of August 6 be consolidated with Nira's appeals
 
 
 [3]
 Nira contends that the confirmation was error because the district court should have accepted Nira's bid at the first auction. This claim is frivolous. We believe it obvious that the district court acted well within its discretion in terminating the first auction and in scheduling another
 Mr. Economou argues that the confirmation was legally flawed for several reasons. He contends, inter alia, that "the show cause orders that initiated the May 13 and July 1, 1987, building-sale hearings were flawed and materially misleading," that the sale price was grossly inadequate, and that "the 10,000 ABT customer/creditors, the de facto owners of the building, should have been individually noticed before the building was offered for sale." These contentions are utterly without merit.