**Vernon A. LEWIS, et ux Peggy Lewis**

**v.**

**KEYES 303, INC. (F/K/A Keyes Offshore, Inc.), et al.**

**Civ. A. No. G–92–631.**

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 21, 1993.

Ernest H. Cannon, Ernest Cannon & Associates, John W. Stevenson, Stevenson, Parker & St. John, Houston, TX, for plaintiffs.

James Richard Watkins, Royston Rayzor Vickery & Williams, Galveston, TX, Christopher L. Evans, Meyer Orlando & Evans, Houston, TX, for defendants.

Ervin A. Apffel, Jr., Patricia McGarvey Rosendahl, McLeod Alexander Powel & Apffel, P.C., Galveston, TX, for third-party defendant.

### ORDER GRANTING THIRD–PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Before the Court is the motion of Third–Party Defendant Completion Services, Inc. ("CSI") for summary judgment on the third-party claim for contractual indemnity asserted against it. Because the contract at issue as applied to this case is void as a matter of law, summary judgment is GRANTED.

### Background

The underlying lawsuit here concerns personal injuries sustained by Plaintiff Vernon Lewis while working aboard a jack-up drilling rig, the Marine 17. Lewis is an employee of CSI. At the time of his injuries, Defendant Marine Drilling Company owned the Marine 17, and Defendant Unocal Exploration Corporation had use of the vessel under contract. The well on which Mr. Lewis was working is located forty miles south of Freeport, Texas, on the Outer Continental Shelf ("OCS"). Lewis sued the vessel, its owners, Third–Party Plaintiff Union Oil Company of California ("Union Oil"), and Unocal Exploration (and related entities) for negligence under the general maritime law and the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq.

Mr. Lewis and another CSI employee were aboard the Marine 17 to perform well completion services. Although the evidence before the Court strongly suggests that CSI was hired for this purpose by Unocal Exploration (the rig's charterer), Union Oil claims that it actually hired CSI. At the time, Unocal Exploration was Union Oil's wholly-owned subsidiary. Sometime after Mr. Lewis' accident, Unocal Exploration completely merged into Union Oil, ceasing to exist as a separate entity.

Back in 1975, Union Oil and CSI entered into a "blanket services contract" ("BSC") designed to provide the terms and conditions governing contemplated future true contracts between these parties. Under this compact, CSI agreed to indemnify and defend Union Oil against any liability for injuries sustained by CSI employees. Union Oil claims that this BSC entitles it to full indemnity from CSI in this case. However, CSI has paid Lewis worker's compensation benefits under the LHWCA. CSI therefore asks for summary judgment on this claim, on the grounds that the indemnity clause is void under the LHWCA because CSI is Lewis' LHWCA employer, and Union Oil is a "vessel" within the meaning of that statute.

### Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and

the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, the weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 255, 106 S.Ct. at 2513.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met it Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial*." *Matsushita, supra*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis original).

### Indemnity and the LHWCA

As a floating, movable jack-up drilling rig, the Marine 17 is a "vessel" for the purposes of admiralty law. *Marathon Pipe Line v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 233 (5th Cir.1985). Because Mr. Lewis was not a seaman,[1] his personal injury claims are governed by the LHWCA for two independent reasons. First, he is a covered "employee" as defined by the LHWCA itself, as he was working on a vessel in navigable waters in a non-crew capacity. 33 U.S.C. § 902(3) (1986); *see Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 416 n. 2, 105 S.Ct. 1421, 1423, 84 L.Ed.2d 406 (1985) (non-crew workers on floating rigs are covered by LHWCA). Secondly, the LHWCA applies by adoption under the Outer Continental Shelf Lands Act ("OCSLA"), because Mr. Lewis' injuries occurred on the OCS while he was employed in the exploration for oil. 43 U.S.C. § 1333(b) (1986); *see Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir.1980) (OCSLA extends full panoply of LHWCA benefits to OCS oil field workers, regardless of whether engaged in "maritime employment"); *Herb's Welding*, 470 U.S. at 422 n. 8, 105 S.Ct. at 1426 n. 8 (same).

The no-fault compensation provided by the LHWCA is a worker's exclusive remedy against his employer.[2] *Doucet v. Gulf Oil Corp.*, 783 F.2d 518, 525 (5th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). However, under § 905(b) an employee may sue the vessel on which he was injured for negligence, and this is the employee's exclusive remedy against the vessel. Furthermore, this section provides that "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." 33 U.S.C. § 905(b). Hence indemnity contracts be-

---

1. Mr. Lewis does not claim status as a Jones Act seaman in his First Amended Complaint, and the evidence before the Court indicates such a claim would be insupportable.

2. According to uncontroverted summary judgment evidence, Mr. Lewis has received LHWCA benefits from CSI for the injuries complained of here.

tween the vessel and the employer are void. 783 F.2d at 525.[3]

■ For the purposes of the LHWCA, the term "vessel" includes a vessel's "owner, owner pro hac vice, agent, operator, charter [sic] or bare boat charterer...." 33 U.S.C. § 902(21). The courts of this circuit have consistently held that the term "charter" in the statute is a misprint of "charterer," and that the time charterer of a vessel is liable for negligence as the "vessel" under § 905(b), to the extent that he exercises control over the vessel. *Kerr–McGee Corp. v. Ma–Ju Marine Serv. Inc.*, 830 F.2d 1332, 1338 (5th Cir.1987); *Balfer v. Mayronne Mud & Chemical Co.*, 762 F.2d 432, 435 (5th Cir. 1985); *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1041 (5th Cir.1983); *Randall v. Chevron U.S.A., Inc.*, 788 F.Supp. 1398, 1405 (E.D.La.1992). Therefore, when a LHWCA-covered contractor's employee sues an oil company in negligence for injuries sustained on a floating drilling rig chartered to the oil company, any indemnity agreement between the oil company and the injured worker's employer is void. *Meredith v. A & P Boat Rentals, Inc.*, 414 F.Supp. 788 (E.D.La.1976) (Alvin B. Rubin, J.); *Tenneco, Inc. v. Loomis Int'l, Inc.*, 730 S.W.2d 96 (Tex.App.—Houston [14th Dist.] 1987, no writ); *see Aucoin v. Pelham Marine, Inc.*, 593 F.Supp. 770 (W.D.La.1984) (time charterer's indemnity claim against LHWCA employer is barred); *Boudreaux v. American Workover, Inc.*, 680 F.2d 1034, 1036 n. 2 (5th Cir.1982) (noting that, had the drilling-vessel injury at issue taken place on the OCS, the operator's indemnity claim against the injured contractor's employer would clearly have been barred by the LHWCA), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983).

### Unocal as Charterer?

■ To avoid this rule Union Oil first claims that the LHWCA anti-indemnity provision does not apply to this case because the contract under which it used the Marine 17 was not a "charter" within the meaning of the LHWCA. In support of this contention, Union Oil points to the title of the contract, under which the agreement is termed an "Offshore Daywork Drilling Contract." Union Oil argues that because this form contract pertains to drilling equipment generally, whether land-based or offshore, it is not a "charter."

This argument engenders deep empathy in this Court for the frustration Socrates must have felt with the Sophists. Union Oil offers utterly no facts which might distinguish its arrangement with the subject vessel from that of a typical charter, beyond the title of the contract and the fact that a similar form is used to gain the use of (the "charter" of?) land-based rigs. Indeed, a mere cursory glance at the contract reveals that the "form" portion governs only the business relationship of the parties, while the objects of that form are described in the much more extensive appendices. These describe an OCS drilling site, a marine drilling vessel's specification, the required ship's crew, the vessel's American Bureau of Shipping certification, the vessel's Coast Guard certification, and certification of marine hull insurance.

Black's defines "charter":

The term "charter party" or "charter agreement", often shortened to "charter," designates the document in which are set forth the arrangements and contractual engagements entered into when one person (the "charterer") takes over the use of the whole, or a substantial portion, of a ship belonging to another (the "owner").

Black's Law Dictionary 236 (6th ed. 1990). "In a typical time charter, the charterer obtains use of the ship and the owner maintains control of the ship and provides the crew." *Tenneco*, 730 S.W.2d at 97. These definitions describe precisely the relationship of Unocal Exploration to the Marine 17. While Marine Drilling Company provided the crew, under its "Offshore Daywork Drilling Contract" Unocal Exploration gained the exclusive use of the drilling vessel for the period needed to drill one or more wells. Unocal

---

**3.** Section 905(c) removes this proscription to the extent that indemnity agreements between vessels and employers on the OCS are reciprocal. Union Oil, however, has presented no evidence that the subject agreement was reciprocal.

Exploration directed the location of the vessel's operations and ultimately controlled the manner in which they were conducted. Unocal Exploration kept a "company man" on board the vessel to oversee these operations. It is unequivocally indisputable that Unocal Exploration was the "charterer" of the Marine 17 at the time of Mr. Lewis' accident, bringing Unocal Exploration within the definition of "vessel" for purposes of the LHWCA.

### Union Oil as Charterer

■ Union Oil next contends that Unocal Exploration's status as charterer of the Marine 17 does not proscribe the indemnity agreement between Union Oil and CSI because Unocal Exploration was, at the time of the accident, a separate and distinct entity. Under the scenario as Union Oil attempts to describe it, Unocal Exploration chartered the Marine 17, but Union Oil hired CSI to work on the vessel. In other words, Union Oil hired CSI to work on *somebody else's* chartered vessel, so Union Oil is not the "vessel"

and the § 905 prohibition of vessel/employer indemnity is inapplicable to their contract with CSI. Careful analysis renders this suggestion ridiculous.

At the outset, the Court notes that Union Oil's description of the transaction is wholly unsupported by the record. Rather, the only reasonable inference that can be drawn from the uncontroverted evidence is that Unocal Exploration hired CSI to work on its rig.[4] Therefore, Union Oil's only apparent potential liability for Mr. Lewis' injuries lies in its role as corporate successor to Unocal Exploration, the charterer of the Marine 17.[5] Union Oil does not offer, and this Court cannot envision, any alternative characterization of its role which might lead to liability on its part.

Furthermore, even if—as Union alleges—Union Oil hired CSI to work on a separate entity's chartered vessel, then it must have acted as that entity's agent in this respect. Section 905's indemnity proscription would be but a minor legal distraction if it could be

4. Union Oil's own summary judgment evidence includes the following excerpts from the deposition of one George T. Armistead who, though otherwise unidentified, appears to be or to have been a Union Oil employee:

Q: In March of 1991, did Unocal Exploration Corporation request services of Completion Services Inc. to be performed on the MARINE 17 rig?
A: Yes.

. . . . .

Q: Was it your understanding that the company that had contracted for the services of Completion Services Inc. on the MARINE 17 drilling rig was Unocal Exploration Corporation?
A: Not really. I mean, as the way I go—the way I understand it is Union Oil Company of California was the—is as I understand it and I'm very confused, is the managing general partner for Unocal Exploration Corporation. In other words, employees of Union Oil Company of California, we—we think of in effect have been [sic] contracted by Union Exploration Corporation—that's the way—I mean, I think of it, is to provide the management and the supervision of all the projects for Unocal Exploration Corporation properties. So in other words, Unocal Exploration Corporation is nothing more than properties, leases and assets and oil and gas in the ground and platforms.

. . . . .

Q: So to some degree, is it possible that Unocal Exploration Corporation was using your

services with respect to the contract it entered into with Completion Services Inc.?
A: That's the way I think of it, yes.

Union Oil has also attempted to mislead this Court on this issue with the inclusion of page 30 of the deposition of one Curtis Shroyer, a Union Oil employee who was the "company man" aboard the Marine 17 at the time of the accident. On said page 30, Shroyer testified that he currently works for Union Oil. Union Oil neglected to include page 29 of this deposition, in which Shroyer testified:

Q: Okay. Are you the person who is overall in charge of the rig?
A: Yes, I am.
Q: And you, at the time, were an employee of Unocal Exploration Corporation?
A: Yes, ma'am.

Furthermore, Unocal Exploration owned the lease on which the Marine 17 was drilling, and all of CSI's invoices and work orders were addressed to "Unocal Exploration," "Unocal," or "Union Exploration." Hence the inescapable conclusion supported by the evidence is that Unocal Exploration, not Union Oil, hired CSI.

5. Since Unocal hired CSI, it is also questionable whether the BSC between Union Oil and CSI even *applies* to this case.

circumvented so easily. Every carrier and exploration company would simply charter vessels through paper subsidiaries and require contractors to sign indemnity contracts with the parent company, knowing that any potential plaintiff against the "actual" charterer would be forced to sue the asset-laden parent in order to secure recovery. The statute, however, voids any indemnity contracts which would make the employer liable to the vessel "directly or indirectly." 33 U.S.C. § 905(b). Because Union Oil's BSC with CSI would allow indirect indemnification of the charterer by an LHWCA employer, as applied here this provision is void. *See Gaudet v. J. Ray McDermott & Co.*, 568 F.Supp. 795, 798 (E.D.La.1983) (§ 905 forbids indemnity by employer to non-vessel oil company, where oil company's sole liability is indemnity to vessel).

\* \* \* \* \* \*

In sum, Union Oil's third-party indemnity claim against CSI is barred by the LHWCA, as Union Oil stands in the shoes of the charterer of the vessel on which CSI's employee, the Plaintiff in this case, was injured. Therefore, CSI's motion for summary judgment is GRANTED. It is further ORDERED that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.